**Loren T. RAYMOND and Corrine Raymond, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 13621.

United States Court of Appeals
Sixth Circuit.

Aug. 4, 1959.

James P. Mattimoe, Detroit, Mich., for appellants.

Arthur I. Gould, Tax Division, Dept. of Justice, Washington, D. C., Charles K. Rice, Lee A. Jackson, A. F. Prescott, Washington, D. C., Fred W. Kaess, John L. Owen, Detroit, Mich., on brief, for appellee.

Before SIMONS and MILLER, Circuit Judges, and SHELBOURNE, District Judge.

SHELBOURNE, District Judge.

The question involved upon this appeal is whether the appellants, husband and wife, the sole stockholders in a corporation which was liquidated in 1952, may revoke their election to be taxed under the provisions of Section 112(b) (7) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (7).

The District Court, we think correctly, decided that such election could not be revoked and dismissed the complaint. The judge held that the mistake involved was one of law on the part of complainants' counsel and tax accountant.

Appellants claim on this appeal that the mistake involved is one of fact and that, on authority of Meyer's Estate v. Commissioner, 5 Cir., 200 F.2d 592, they were authorized to revoke their election to be taxed under Section 112(b) (7) and to have their tax determined under the provisions of Section 115(c) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 115(c).

The facts in this case are not in serious dispute and were stipulated in the main, though testimony was adduced at the trial. Substantially, the facts are that in 1952 the appellants were the holders of all the capital stock of the Major Mold & Die Corporation. Prior to the organization of the corporation, appellant

Loren T. Raymond operated the business as an individual proprietorship. The assets of the proprietorship were transferred to the corporation, and an item of goodwill in the amount of $50,000 was set up on the corporate books. For all assets and goodwill a total of 840 shares of common stock were issued; 598 shares to the husband, 158 shares to the wife, and 84 shares to certain employees of the corporation. The appellants purchased the 84 shares for $149.31 per share in September, 1952. The par value of the stock was $100.00 per share.

In 1951, at the end of its fiscal year ended June 30, the corporation began amortizing the goodwill account. At the end of the fiscal year 1952, surplus adjustments were made which left a balance of $32,682.85 in the goodwill account at that time. Just prior to the liquidation in September, 1952, $32,682.85 was charged to surplus, which amount was correspondingly credited to the goodwill account and reduced the balance in that account to zero.

Upon the liquidation of the corporation, adopted by the corporation September 27, 1952, all of its properties were transferred to the appellants and all of the corporation's liabilities were assumed by them in complete redemption of the entire outstanding capital stock. The assets were then transferred and the liabilities assumed by a partnership which conducted the business under the name of Major Mold & Die Company.

Upon filing their joint income tax returns for the year 1952, appellants elected by appropriate Treasury form to have the gain on the liquidation of their stock in the dissolved corporation recognized and taxed as a dividend under the provisions of Section 112(b) (7) of the Internal Revenue Code of 1939. In the original return for the year 1952, no dividend income was reported as resulting from the liquidation of the corporation due to amortization and write-off of the goodwill account. Had the corporation not amortized the goodwill account, its accumulated earnings and surplus as of September 30, 1952, would

have amounted to $49,898.20. Appellants were notified by the District Director that the write-off of the corporation's goodwill account was erroneous. On June 16, 1953, appellants filed an amended return for the year 1952, indicating dividend income of $37,122.42, pursuant to their election under Section 112(b) (7). The effect of this amended return was the disclosure of an income tax liability of $22,390.80, which amount was paid upon the filing of the amended return.

October 28, 1953, appellants filed a second amended return for the year 1952, in which appellants undertook to utilize the provisions of Section 115(c) of the Internal Revenue Code of 1939. This return reported a capital gain of $161,944.26 on the liquidation of the corporation's capital stock and eliminated the dividend income of $37,122.42 reported in the first amended return. The second amended return brought about a change in the basis of assets transferred by the corporation to the partnership, and as a result appellants reported partnership income of $3,474.09 instead of $6,891.16 reported in the original partnership return for 1952. This return also disclosed an increase of $19,547.99 in tax liability above the tax disclosed in the first amended return, which amount was paid by the appellants at the time of the filing of this second amended return.

Thereafter, the District Director determined that the appellants' election to be taxed under the provisions of Section 112(b) (7) could not be withdrawn or revoked, and that the computations of the gain on the liquidation of the corporation could not be recognized under Section 115(c). The following adjustments were made in appellants' 1952 income: (1) dividend income was increased in the amount of the accumulated earnings up to the date of liquidation, September 30, 1952, amounting to $49,898.20, representing the difference between the original value of goodwill of $50,000 (less a small deficit on the books of the corporation), which amount was taxable as a dividend under Section

112(b) (7); (2) the capital gain on the liquidation of the stock of the corporation under Section 115(c) claimed by appellants in their second amended return for 1952, amounting to $82,622.36, was eliminated, and (3) appellants' income from the partnership, Major Mold & Die Company, for the year 1952 was increased by $17,959.66 over and above the amount reported in the second amended return for 1952.

In September, 1953, appellants sold their interest in the partnership for a total of $281,347.16, of which $260,000 was received during the year 1953 and the balance of $21,347.16 in March, 1954. In their 1953 return, a long-term capital gain of $24,489.48 was reported as having been realized in that year, the gain being based upon the difference between the amount received in 1953 and a cost basis of $235,510.52.

Upon investigation of the 1953 return, the Revenue Agent increased the sale price by $21,347.16, representing the balance of the sale price received in March, 1954, and adjusted the cost basis of the assets transferred to the partnership on the liquidation of the corporation from the amount reported in appellants' 1953 return to $158,731.20. As a result, the long-term capital gain was increased from $24,489.48 to $131,723.79, representing a net long-term capital gain over that reported in the 1953 original return of $51,369.71. The Agent also adjusted appellants' income from the partnership by increasing the income over and above that reported by appellants in the 1953 return by $7,252.85. The increase in the partnership income was primarily due to a reduction in allowable depreciation based upon the cost basis of depreciable assets as determined by the Revenue Agent for the calendar year 1952, which last determination was stipulated as being consistent with the refusal of the Commissioner of Revenue to allow appellants to revoke their elections to be taxed under the provisions of Section 112(b) (7). As a result, there was an aggregate assessment of $33,442.40 for the years 1952 and 1953, of which $31,738.35 was credited to appellants, leaving a balance of $1,704.05 for which a counterclaim was filed in this action.

Within the allowable time, appellants filed a claim for refund for the year 1952 in the amount of $49,482.72 and for the year 1953 in the amount of $47,825.47. The claim as to both years was based upon the sole contention that the District Director had erroneously denied the appellants the right to revoke the election filed in 1952 to have the gain on the liquidation of the corporation recognized and taxed under Section 112(b) (7).

Judge Lederle, the trial judge, found the facts substantially as stated here. He held that the election to have the gain from the liquidation of the corporation taxed under the provisions of Section 112(b) (7) made by appellants at the time their original income tax return for the year 1952 was filed was not subject to revocation or withdrawal, having been made by appellants with full knowledge of all the facts with respect to the amortization of the goodwill account and all other facts relating to the liquidation. He held that if any mistake had occurred it was on the part of counsel and the accountant and constituted a mistake of law, for which a revocation was not allowable; citing Sam Goldman v. Commissioner, 19 T.C.M. 252. See: Rosenfield v. United States, 3 Cir., 254 F.2d 940, certiorari denied 358 U.S. 833, 79 S.Ct. 55, 3 L.Ed.2d 71.

Stockholders of a liquidating corporation with a large earned profit would benefit by being taxed under the provisions of Section 115(c). Section 112(b) (7) provides that written elections to have profits taxed under that provision of the statute shall be made within 30 days after the adoption of the plan of liquidation and "be not in contravention of regulations prescribed by the Commissioner." The pertinent regulation provides that the taxpayer's election to be governed by the provisions of Section 112(b) (7) cannot be withdrawn or revoked.

184

The expression of the Supreme Court in Riley Inv. Co. v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36, in an analogous situation, indicates the reason for the prohibition against revocation of a taxpayer's election. The Court said, "If petitioner's view were adopted, taxpayers with the benefit of hindsight could shift from one basis of depletion to another in light of developments subsequent to their original choice. It seems clear that Congress provided that the election must be made once and for all in the first return in order to avoid any such shifts."

The District Judge's findings of fact are in accord with the facts stipulated and so much of the testimony adduced at the trial as was brought to this Court. His conclusions of law are proper and the judgment entered in the District Court, dismissing the complaint and awarding the Government judgment on its counterclaim, is affirmed.