Frank T. SHULL and Ann R. Shull, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7884.

United States Court of Appeals Fourth Circuit.

Argued Oct. 9, 1959.

Decided Oct. 20, 1959.

Raymond F. Garrity, Washington, D. C. (Carl A. Phillipps, Washington, D. C., on brief), for Petitioners.

Arthur I. Gould, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

The question is whether the taxpayers are bound by their election to have their gain upon the liquidation of a closely held corporation recognized and taxed pursuant to the provisions of § 112 (b)(7) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b)(7). The taxpayers contend that the proceedings did not meet the requirements of § 112(b) (7), and that, in any event, their election was filed under a mistake of material fact.

The taxpayers were the owners of all of the outstanding stock of Shull Electric Products Corporation, a corporation organized under the laws of Virginia. It had been organized in 1947 and had acquired, in a tax free exchange, all of the assets of the predecessor South Dakota corporation known as The Shull Company. In the 1947 reorganization, some $43,000.00 of the earned surplus of The Shull Company was capitalized by the successor corporation, Shull Electric Products Corporation.

Between the reorganization of 1947 and the spring of 1952, the uncapitalized surplus of the corporation increased from approximately $6,000.00 to approximately $90,000.00. Its principal asset was a building, which was thought to have appreciated substantially in value.

In 1952, the accountant for the company suggested that the taxpayers consider a 30-day liquidation under the provisions of § 112(b)(7). There is not entire agreement as to the exact advice given by the accountant, but it is clear that the taxpayers acted under the firm impression that there would be no recognition of any portion of their gain for tax purposes until the building was sold, and that, even then, the accumulated earnings and profits would be taxed to them as capital gain rather than as ordinary income. Apparently, they also thought the previously capitalized earnings would not be taxed to them at all.

On April 29, 1952, taxpayers filed with the Commissioner an election to have their gain recognized and taxed under § 112(b)(7). They reported that a plan of liquidation had been adopted on March 31, 1952. The corporation also filed an information return on form 966, in which it reported the plan of dissolution or liquidation had been adopted on March 31, 1952.

In the Tax Court, minutes of a meeting, purportedly held on March 31, 1952, were introduced into evidence. The minutes of that meeting would qualify as a plan of liquidation under § 112(b)(7). Petitioners also produced loose leaf minutes of meetings, purportedly held earlier in the year, which contained resolutions qualifying as an adopted plan of liquidation within the meaning of § 112(b) (7). Since § 112(b)(7) requires that the election of the stockholders be filed not less than 30 days after the adoption of the plan of liquidation, the stockholders could not claim the benefits of § 112(b)(7), if the plan of liquidation was adopted earlier than March 31. If the election was filed within time, it is final and binding upon the stockholders and could not be withdrawn, or revoked, by them.[1]

Under these circumstances, the Tax Court held[2] that the meetings purportedly held earlier than March 31, 1952,

---

1. Treasury Regulations 118 § 39.112(b) (7)-2; Raymond v. United States, 6 Cir., 269 F.2d 181.

2. 30 T.C. 821.

were not held, or, at least, that the taxpayers were not in a position to contend that a plan of liquidation was adopted at those meetings after having certified under oath that the plan of liquidation was adopted at a meeting held on March 31, 1952.[3]

The Tax Court further held that there was not such a mistake of material fact as would give the taxpayers the equitable right to rescind their election.[4] The taxpayers assert that they did not know that the capitalized earnings would be taxed, but there is no testimony which would justify a finding that they did not know the capitalized earnings were there. Apparently, they were acting under a mistake of law, believing even that gain upon their receipt of uncapitalized earnings would not be recognized until the building was sold, and then only as capital gain, but a mistaken view of the law is not a ground for rescinding the election filed under § 112(b) (7).[5]

The findings of the Tax Court are supported by the evidence and we agree with its conclusions.

■ In this Court, for the first time, the taxpayers advance the argument that the plan of liquidation must have been adopted not later than March 27, 1952, when the State Corporation Commission of Virginia issued its certificate dissolving the corporation. The argument is that, under the laws of Virginia, once the certificate of dissolution issues, the corporation continues only for the purpose of winding up its affairs, liquidating its assets, maintaining and defending suits, and that its previous powers to conduct its business are otherwise terminated. They further point to the fact that, under the Virginia law, the control of the property, upon issuance of the certificate of dissolution, passes to the directors, not as directors, but as trustees. This leads the taxpayers to the conclusion that the corporation was in a status of liquidation on March 27, 1952. They say the formal dissolution, compelling, as it does, a liquidation and distribution of the corporate assets, conclusively proves that a plan of liquidation had been placed in effect and was then being executed. In this view, a later formal declaration of the purpose of the stockholders to liquidate the company is meaningless, for the corporation exists for no other purpose than liquidating and winding up its affairs. It may well be that if the taxpayers would benefit by § 112(b)(7) and were claiming under it, the Commissioner would contend that the formal dissolution of the corporation conclusively established the existence of a plan of liquidation on that date. The taxpayers say, in effect, that, if a plan of liquidation is shown to be in process of being executed and effected, an attempt to formalize what has already been done is not a significant adoption of a plan of liquidation and cannot be held to start the 30-day period within which the stockholders must file their election. They further suggest that if the taxpayers did not comply with the requirements of § 112(b)(7), they should be as free to assert that the transaction should be taxed under § 115(c) as is the Commissioner.

These arguments, while essentially legal in nature, have not been presented to the Tax Court. No other case has been

---

3. We doubt that any meeting was actually held on March 31, 1952. On April 10, 1952, the accountant for the company wrote to the company's attorney acknowledging receipt of information that "authority for the liquidation of the corporation had been issued by the Virginia State Corporation Commission under date of March 27." He then expressed the opinion that final adoption by the stockholders of the plan to liquidate should fall within the period March 20–24 and suggested that minutes evidencing such a meeting be prepared by the attorney. Since the dates suggested had already passed, as had March 31, the suspicion naturally arises that the minutes were antedated.

4. See Meyer's Estate v. Commissioner of Internal Revenue, 5 Cir., 200 F.2d 592.

5. Raymond v. United States, 6 Cir., 269 F. 2d 181; Goldman v. Commissioner, Tax Court Memo, Docket No. 22205.

called to our attention in which a similar theory and argument has been advanced and considered. We do not think we can dismiss this argument as patently without merit, but, before we consider it, we think the Tax Court should have an opportunity to consider and act upon it in the light of the requirements of § 112 (b)(7) and the policy which led to its adoption. For that purpose, the judgment of the Tax Court will be vacated and the cause remanded for consideration of the theory and argument advanced in this Court for the first time.

Vacated and remanded.