FRANK T. SHULL AND ANN R. SHULL, PETITIONERS, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63655.   Filed June 23, 1960.

*Raymond F. Garrity, Esq.*, for the petitioners.
*W. Ralph Musgrove, Esq.*, for the respondent.

### SUPPLEMENTAL OPINION.

MULRONEY, *Judge:* Upon appeal of *Frank T. Shull*, 30 T.C. 821, the United States Court of Appeals for the Fourth Circuit vacated the judgment of this Court and the cause was remanded for our consideration of a new argument advanced by petitioners in the Court of Appeals. *Shull* v. *Commissioner*, 271 F. 2d 447.

Reference is made to our opinion, *Frank T. Shull, supra*, for the background facts but a short summary of those facts will be necessary in order to present the new theory now urged by petitioners.

Frank T. Shull owned about 99 per cent of the stock of Shull Electric Products Corporation, a Virginia corporation, which will be referred to as the corporation.  His wife, Ann R. Shull, owned the remainder of the stock in the corporation.

Petitioners, on April 29, 1952, filed elections to liquidate the corporation under the provisions of section 112(b)(7).[1]  This statute requires that the liquidation be under a plan of liquidation to be completed within 1 month, and the stockholders' elections must be filed within 30 days after the adoption of the plan of liquidation. In the elections (Form 964) filed with the Commissioner on April 29, 1952, petitioners stated the plan of liquidation, to be completed in the month of April 1952, had been adopted on March 31, 1952. The corporation also filed an information return (Form 966) in which it reported the plan of liquidation had been adopted on March 31, 1952, and it attached a copy of the minutes of a stock-

---

[1] All section references are to the Internal Revenue Code of 1939, unless otherwise noted

holders meeting held on March 31, 1952, showing the adoption of the plan.

After the liquidation, when petitioners learned a section 112(b) (7) liquidation would result in a tax detriment to them (in that it rendered corporate earnings and profits, including the earnings and profits of a predecessor corporation, taxable to them as dividends), petitioners, in 1955, sought to revoke their elections and have the gains they realized in the liquidation taxable at capital gains rates under section 115(c). At the trial, and upon briefs filed after the trial, petitioners argued there was no actual meeting of the stockholders on March 31, 1952, and also their elections were not timely filed. In this argument they relied upon testimony that the March 31 minutes attached to the corporation's returns were merely documents prepared by the accountant and no actual meeting of the stockholders was held on that date and other minutes of the corporation which they argued showed the decision to liquidate under section 112(b)(7) and the adoption of a plan to that effect, had occurred prior to March 31, 1952, and therefore their April 29 elections were not timely filed.

We held petitioners, having certified under oath that the plan of liquidation was adopted at a March 31, 1952, stockholders meeting, were in no position to contend such meeting was not held or that the plan was adopted at earlier meetings, even if those earlier meetings were actually held. We also held the election once made could not be revoked. Upon appeal, the Court of Appeals in its opinion stated: "The findings of the Tax Court are supported by the evidence and we agree with its conclusions." The opinion of the Court of Appeals goes on to state:

In this Court, for the first time, the taxpayers advance the argument that the plan of liquidation must have been adopted not later than March 27, 1952, when the State Corporation Commission of Virginia issued its certificate dissolving the corporation. The argument is that, under the laws of Virginia, once the certificate of dissolution issues, the corporation continues only for the purpose of winding up its affairs, liquidating its assets, maintaining and defending suits, and that its previous powers to conduct its business are otherwise terminated. They further point to the fact that, under the Virginia law, the control of the property, upon issuance of the certificate of dissolution, passes to the directors, not as directors, but as trustees. This leads the taxpayers to the conclusion that the corporation was in a status of liquidation on March 27, 1952. They say the formal dissolution, compelling, as it does, a liquidation and distribution of the corporate assets, conclusively proves that a plan of liquidation had been placed in effect and was then being executed. In this view, a later formal declaration of the purpose of the stockholders to liquidate the company is meaningless, for the corporation exists for no other purpose than liquidating and winding up its affairs. It may well be that if the taxpayers would benefit by §112(b)(7) and were claiming under it, the Commissioner would contend that the formal dissolution of the corporation conclusively established the existence of a plan of liquidation on that date.

The taxpayers say, in effect, that, if a plan of liquidation is shown to be in process of being executed and effected, an attempt to formalize what has already been done is not a significant adoption of a plan of liquidation and cannot be held to start the 30-day period within which the stockholders must file their election. They further suggest that if the taxpayers did not comply with the requirements of §112(b)(7), they should be as free to assert that the transaction should be taxed under §115(c) as is the Commissioner.

These arguments, while essentially legal in nature, have not been presented to the Tax Court. No other case has been called to our attention in which a similar theory and argument has been advanced and considered. We do not think we can dismiss this argument as patently without merit, but, before we consider it, we think the Tax Court should have an opportunity to consider and act upon it in the light of the requirements of §112(b)(7) and the policy which led to its adoption. For that purpose, the judgment of the Tax Court will be vacated and the cause remanded for consideration of the theory and argument advanced in this Court for the first time.

The new argument is based upon the admitted fact that on March 27, 1952, petitioners as stockholders of the corporation filed in the office of the State Corporation Commission of the State of Virginia their written consent that the corporation should be dissolved and the said commission issued its certificate on March 27, 1952, certifying, "The Shull Electric Products Corporation, has ceased to exist and shall stand dissolved and its Board of Directors shall proceed to settle up and adjust its business and affairs."

The common law rule that the dissolution of a corporation completely terminates its existence has quite generally been modified by statutes. We have set forth in a footnote the pertinent provisions of the statutes of Virginia[2] which provide for a continuance of the

---

[2] Title 13, chapter 6, of the Code of Virginia of 1950, as amended, provides as follows:

Sec. 13–62. **Dissolution by unanimous consent of stockholders.**—Whenever all the stockholders consent in writing to the dissolution of a corporation, no meeting or notice thereof shall be necessary but upon the filing of the consent in its office the Commission shall issue a certificate of dissolution, and the corporation will thereupon stand dissolved and the board shall proceed to settle up and adjust its business and affairs; but the dissolution shall not affect the rights of any creditor of the corporation existing at the time of the dissolution.

\*    \*    \*    \*    \*    \*    \*

Sec. 13–70. **Continuation of corporate existence for purpose of winding up its affairs.**—All corporations, whether they expire by their own limitations or are otherwise dissolved or their corporate existence is otherwise terminated, shall, nevertheless, be continued for such length of time, not exceeding three years from their dissolution, expiration or termination, as is necessary for the purpose of prosecuting and defending suits by or against them, and enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital, but not for the purpose of continuing the business for which they were established. If the affairs of any such corporation be not wound up by its directors within three years from the date of dissolution, expiration or other termination, they shall be wound up in the manner provided by § 13–73.

\*    \*    \*    \*    \*    \*    \*

Sec. 13–72. **Directors to settle affairs after dissolution.**—Upon the dissolution, expiration or revocation by operation of law of any corporation, the directors or other governing body, by whatever name it may be known, unless action to the contrary be taken as provided in the following section, shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and cause to be conveyed property, real and personal, and divide the money and other property among the stockholders, according to their respective rights, after paying its debts.

existence of the corporation for 3 years after dissolution for certain limited purposes amongst them being "gradually to settle and close their business, to dispose of and convey their property, and to divide their capital."

We do not agree with the argument advanced by petitioners that the adoption of a plan of liquidation at a stockholders meeting during the extended period would be invalid under Virginia law based on language in the law (sec. 13–62, *supra*, footnote 2) that after the issuance of the certificate of dissolution the corporation shall "stand dissolved" and in the certificate of dissolution that it "ceased to exist." [3] Its existence for what is in effect liquidation purposes was specifically continued. (Sec. 13–70, *supra*, footnote 2.) Surely the adoption of a plan of liquidation can be considered a part of the liquidation process, or, as the Virginia statute (sec. 13–70, *supra*, footnote 2) states, "gradually to settle and close their business, to dispose of and convey their property, and to divide their capital." The statute, in effect, gives the corporation power to take most any corporate action during the extended period after dissolution, so long as the action was reasonably designed to accomplish the purpose of collecting its assets, discharging its obligations, and winding up its affairs. The adoption of a plan of liquidation could be accomplished by appropriate corporation action during the extended period after dissolution.

Neither do we think there is merit in petitioner's argument that the stockholders could not, after dissolution, take action, or at least such action as adopting a liquidation plan. This argument is based on the language of the Virginia statute (sec. 13–62 and sec. 13–72, *supra*, footnote 2) to the effect that after dissolution it is the board of directors which shall proceed to settle up the business and that they "shall be trustees thereof, with full power to settle the affairs" (sec. 13–72) of the company. Petitioner draws from this language support for his argument that corporate action during the extended period must be by the directors and not by the stockholders at a stockholders meeting. The fact that the statute characterizes the directors as trustees is of no particular significance, "they are not trustees of a trust in any true sense of the word." 16 Fletcher, Cyclopedia of Corporations, sec. 8175 (perm. ed.). The Virginia statutes set forth in footnote 2 must be read together. When we see that sec. 13-70 continues the "existence" of the corporation for certain purposes it must mean the corporation can act in the way it could before dissolution, including action taken at a stockholders meeting, so long as the statutory purpose is served. Sections 13–62 and

---

[3] The only opinion of a Virginia court cited by petitioner is *Shepherd* v. *F. J. Kress Box Co.*, 154 Va. 421, 153 S.E. 649. The opinion merely holds the corporation, during the extended period, was not dissolved as to the suit of a creditor.

13-72 merely contain grants of power to the directors to do such acts as disposing of all of the property of a corporation, a power the directors would not ordinarily have since such acts are clearly beyond the ordinary business of a corporation.

Petitioners' final argument is that the plan of liquidation of the corporation could not have been adopted later than the dissolution date of March 27, 1952. The argument here is somewhat the same as heretofore urged and disposed of in our former opinion: That the corporation had adopted a plan of liquidation under section 112(b)(7) prior to March 31, 1952. Here the reliance is not upon minutes of former meetings of the stockholders, but instead, upon the dissolution of the corporation and the certificate thereof, under date of March 27, 1952. The argument is that dissolution is proof positive that a plan of liquidation is in the process of being executed and, since the election under the statute must be filed within "thirty days after the adoption of the plan of liquidation" (sec. 112(b) (7) (D)), it would have to be filed not later than 30 days after the dissolution date of March 27, 1952, and consequently their elections, filed April 29, 1952, were not timely.

It may be true that voluntary dissolution is conclusive proof of a general plan to liquidate if the word "plan" is given the meaning of "intent." We do not think it is conclusive proof of the adoption of a plan to liquidate such as is required under section 112(b)(7).

It is clear from the language of the statute [4] and its legislative history [5] that the liquidation plan must be a plan that is adopted

---

[4] Section 112(b)(7)(C) provides as follows:

(C) Qualified Electing Shareholders.—The term "qualified electing shareholder" means a shareholder (other than an excluded corporation) of any class of stock (whether or not entitled to vote on the adoption of the plan of liquidation) who is a shareholder at the time of the adoption of such plan, and whose written election to have the benefits of subparagraph (A) has been made and filed in accordance with subparagraph (D), but—

(i) in the case of a shareholder other than a corporation, only if written elections have been so filed by shareholders (other than corporations) who at the time of the adoption of the plan of liquidation are owners of stock possessing at least 80 per centum of the total combined voting power (exclusive of voting power possessed by stock owned by corporations) of all classes of stock entitled to vote on the adoption of such plan of liquidation; * * *

[5] Conference committee report, H. Rept. No. 2330, 75th Cong., 3d Sess.:

Under the conference agreement, any shareholder in either group [corporate or noncorporate] (whether or not entitled to vote on the adoption of the plan of liquidation) may entitle himself to the benefits of the provisions as to recognition of gain, in respect of shares owned by him at the time of the adoption of the plan of liquidation, if the following conditions are complied with:

(1) The shareholder must have made and filed a written election (which can not be withdrawn or revoked) to have the benefits of the nonrecognition of gain provided for;

(2) Such written election must be filed by him or by the liquidating corporation with the Commissioner within 30 days after the adoption of the plan of liquidation;

(3) Such making and filing must be in a manner not in contravention of regulations prescribed by the Commissioner with the approval of the Secretary; and

(4) Such elections must have been so filed by shareholders of the same group who are owners of stock possessing at least 80 percent of the combined voting power of all classes of stock owned by shareholders of the same group on the date of, and entitled to vote upon, the adoption of the plan of liquidation.

538

by the votes of the stockholders. If the written consents of the shareholders to the dissolution be considered shareholders' votes, they would amount to no more than a unanimous vote to accomplish dissolution. Dissolution of a corporation is not liquidation. We said in *Mrs. Grant Smith*, 26 B.T.A. 1178: "It is well established that the mere dissolution of a corporation does not effect a distribution of its assets among its stockholders * * * ."

Dissolution of a corporation merely signifies the termination of its existence. It necessitates liquidation and, in Virginia, as in most States, provision is made for extended existence after dissolution in order to accomplish liquidation. It cannot be said that dissolution even though accomplished by unanimous consent of the shareholders is the adoption of a plan of liquidation such as to start the running of the 30-day period within which shareholders must file their elections under section 112(b)(7).

Moreover we think the plan of liquidation required by section 112(b)(7) must be one that *provides* for liquidation in 1 calendar month. Section 112(b)(7)(A)(i) speaks of when "the liquidation is made in pursuance of a plan of liquidation adopted after December 31, 1950" and section 112(b)(7)(A)(ii) speaks of when "the transfer of all the property under the liquidation occurs within some one calendar month in 1951, 1952, or 1953." The Commissioner seems to have construed the statute as requiring the adoption of a plan that *provides* for liquidation entirely within a certain named calendar month. His Regulations 118, section 39.112(b), provide, in part, that the written election of the shareholder shall be on "Form 964 (revised) in accordance with the instructions printed thereon."

The printing on Form 964 calls for the electing stockholder to state the date and the hour that the corporation "adopted a plan of complete liquidation *providing for* a distribution in complete cancellation or redemption of all of its stock, and for the transfer of all of its property under the liquidation entirely within" a certain named calendar month. (Italics supplied.)

Here the petitioners filed their elections on this Form 964 stating the corporation had adopted the plan on March 31, 1952, at 3 p.m. and the plan provided for liquidation and transfer of all its property entirely within the month of April 1952. The corporation filed its information return on Form 966, and, attached a copy of the plan it had adopted by stockholders' votes at a special stockholders meeting. As pointed out earlier, dissolution prior to March 31, 1952, was no obstacle to the corporation, at a stockholders meeting, adopting this plan providing for liquidation entirely within 1 month. The extended period provided for by the Virginia statutes, continued the existence of the corporation for liquidation purposes.

Assuming petitioners can be heard to argue their elections were not timely, we hold they were not rendered untimely by reason of the fact dissolution had occurred more than 30 days before April 29. It was the adoption of the plan on March 31 and not the dissolution on March 27 that started the 30-day period within which the shareholders could file their elections.

We feel the new argument advanced by petitioners is without merit. We hold for the respondent.

*Decision will be entered under Rule 50.*