323 F.2d 792
 ESTATE of J. F. DARBY, Don C. Bothwell and William F. Hendrick, Executors, Appellants,
v.
Earl R. WISEMAN, District Director of Internal Revenue for the District of Oklahoma, Appellee.
Earl R. WISEMAN, District Director of Internal Revenue for the District of Oklahoma, Appellant,
v.
ESTATE of J. F. DARBY, Don C. Bothwell and William F. Hendrick, Executors, Appellees.
 No. 7312.
 No. 7313.
 United States Court of Appeals Tenth Circuit.
 October 21, 1963.
 
 Donald P. Moyers, Tulsa, Okl. (J. H. Conway, Jr., and Martin, Logan, Moyers, Martin & Conway, Tulsa, Okl., on the brief), for Estate of Darby, and Bothwell and Hendrick, ex'rs.
 Loring W. Post, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, B. Andrew Potter, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty., on the brief), for Wiseman, Dist. Director of Internal Revenue for Dist. of Okl.
 Before MURRAH, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 These are companion appeals relating to liability for federal estate tax. The executors paid the disputed tax and sued to recover, asserting, first, the right to change an election as to the deduction of administration expenses and, second, the right to take a widow's allowance as an estate tax marital deduction. The trial court denied the right to change the election and upheld the widow's allowance as a proper marital deduction.
 
 
 2
 No. 7312 is an appeal by the executors from that part of the judgment which relates to the change of election. The decedent Darby, a resident of Oklahoma, died testate on February 27, 1953, without issue, leaving his widow as his sole heir at law. By his will, which was duly admitted to probate, he made a specific bequest to his widow and left his residuary estate to The Trustees of Iowa College.
 
 
 3
 Section 812 of the Internal Revenue Code of 1939 covers the determination of the value of the net estate for federal estate tax purposes and in subparagraph (b) (2) permits the deduction of administration expenses from the value of the gross estate.[1]
 
 
 4
 Section 162 of the same Code relates to the computation of net income from an estate for federal income tax purposes and in subparagraph (e) provides that amounts allowable under § 812(b) shall not be allowed as a deduction under § 23[2] unless there is filed "a statement that the items have not been claimed or allowed" as estate tax deductions and "a waiver of the right to have such items allowed at any time" as estate tax deductions. Section 642(g) of the Internal Revenue Code of 1954 carries forward these provisions in substantially identical language.
 
 
 5
 The executors filed timely fiduciary income tax returns for the estate covering the taxable periods ending December 31, 1953, and December 31, 1954. To each of these returns they attached a statement waiving the right to claim administration expenses of the estate as deductions under § 812(b) (2) and electing to treat such expenses as deductions in determining the net income of the estate. Later, the executors determined that none of the deductions for 1953, and only a part of the deductions for 1954, were of income tax benefit to the estate. At a time when both the income tax returns and the estate tax return were open for examination and under consideration by the Internal Revenue Service, the executors filed a statement with the Director changing their election and claiming the right to take all of the 1953, and part of the 1954, administration expenses as an estate tax deduction.[3] The Internal Revenue Service ruled that the waivers filed by the executors with the fiduciary income tax returns operated as an irrevocable relinquishment of the right to claim the administration expenses as estate tax deductions.
 
 
 6
 Prior to 1942, court decisions held that there was no invalidating inconsistency in the claim of deductions for the same item on both estate and income taxes of an estate because Congress had not prohibited the two deductions.[4] Section 162(e) was designed to prevent double deductions.[5] That section provided that the permitted election should be made "within the time and in the manner and form prescribed by the Commissioner."
 
 
 7
 The regulations[6] give the executors considerable leeway in deciding whether to use administration expenses for income or estate tax purposes. If the executors are in doubt as to liability for estate tax, they can claim the administrative expenses as a deduction and such a claim is not a binding election. Further, the regulations provide that the statement and waiver do not have to be filed with the income tax return but may be filed at any time prior to the expiration of the statutory period of limitation applicable to the taxable year for which deduction is sought. Once the statement and waiver are filed the deduction may not be transferred from the computation of income tax to that of estate tax because the regulations make the waiver a relinquishment of the right to have the deduction allowed at any time under § 812(b) (2).[7]
 
 
 8
 The regulations are valid because they are reasonable, consistent with the statutes, and clearly within the congressional grant of power.[8] The argument that they thwart congressional intent, because in a case such as the one under consideration a denial of deduction rather than a double deduction results, is without merit. The regulations generously permit a taxpayer to defer an election but when that election is made the regulations say that it is final. Congress did not intend that the taxpayers play a game with the Commissioner to determine tax liability on the basis of the last guess.
 
 
 9
 Executors claim that they should be relieved from a hardship imposed by a mistake of fact and law. They point out no fact that was unknown, overlooked, or misunderstood at the time of the original election. The only mistake mentioned is that the deductions claimed would have resulted more beneficially to the taxpayers if they had been applied to the estate rather than the income tax. If a mistake in law occurred, the nature of that mistake is not disclosed beyond its ultimate effect on tax liability.
 
 
 10
 We need not explore the issue of whether a mistake in law voids an election.[9] No claim is made here of ignorance of the law. The executors had a free choice and they made it. The mistake as to tax consequences does not entitle them to make a second choice.[10]
 
 
 11
 In No. 7313 the Director has appealed from that portion of the judgment upholding the widow's allowance as a proper estate tax marital deduction. On the executors' petition the probate court ordered a widow's allowance of $1,500.00 per month during the administration of the estate, beginning with the date of death.
 
 
 12
 Section 812(e) of the Internal Revenue Code of 1939 provides for a so-called marital deduction in determining the value of the net estate. Such deductions are subject to various limitations and qualifications. Among these is subparagraph B of § 812(e) (1) which says that no deduction shall be allowed when an interest passing to a surviving spouse terminates or fails upon the occurrence of an event or contingency and an interest in the property passes or has passed from the decedent to some other person who may possess or enjoy any part of the property upon termination or failure of the surviving spouse's interest.
 
 
 13
 The issue is whether the allowance to the widow qualifies as a marital deduction. The widow, who is still living, was not the residuary legatee and if she had not taken the full allowance, the amount not taken would have increased the residuary share to Iowa College. Accordingly, the decisive question is whether the widow's allowance was a terminable interest within the meaning of § 812 (e) (1) (B). The nature and character of the widow's right must be determined in accordance with local law.[11]
 
 
 14
 Sections 311 and 312 of 58 Oklahoma Statutes Annotated (Perm.Ed.) Provide that upon the death of either husband or wife certain property shall be set apart for the surviving spouse and child or children. Section 314, in material part, says that if the amount so set aside is insufficient the court "may in its discretion make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family."[12]
 
 
 15
 The trial court, relying on its previous decision in King v. Wiseman, D.C., 147 F.Supp. 156, 157, held that an allowance made under § 314 "vests in the widow an absolute indefeasible right to said allowance," and qualifies for the estate tax marital deduction.
 
 
 16
 No Oklahoma state court decision considers the problem here presented. In re Foreman's Estate, 59 Okl. 1, 157 P. 279, 280, says that the widow's allowance "is a right which, in proper cases, it is mandatory upon the court to recognize." This right comes into being upon the death of the decedent.[13] The executors contend that the right is indefeasible and the government says that it ends with death or remarriage.
 
 
 17
 Oklahoma took its probate procedure from California.[14] The California decisions construing the California statute are summarized in Jackson v. United States, 9 Cir., 317 F.2d 821, 824-825, certiorari granted 374 U.S. ___, 84 S.Ct. 172. They hold that the right to a widow's allowance is not a vested right and nothing accrues before the order granting it; that the right is lost when the one for whom it is asked has lost the status upon which the right depends; that the right to future payments abates upon a widow's death; and that the remarriage of a widow subsequent to an order for an allowance abates her right to future payments. Although the California decisions have no binding effect on the Oklahoma law, they are persuasive.
 
 
 18
 Counsel for the executors say that in the admitted absence of pertinent Oklahoma decisions we should accept the view of the trial judge. Although the view of the trial judge is persuasive in the absence of state decisions, we accept it only if we are convinced that it is right.[15] In the case at bar we are convinced that the trial judge was wrong.
 
 
 19
 Even though the right to a widow's allowance comes into being on the death of the decedent, it is inchoate until the probate court enters an order for "such reasonable allowance out of the estate as shall be necessary for the maintenance of the family."[16] And the court may make such an order if amounts otherwise set apart are "insufficient for the support of the surviving spouse."[17] When a change of status occurs by way of death or remarriage, the reason for the allowance disappears and the right to the allowance ends. The possibility of such change in status makes the right terminable rather than indefeasible and the legal attributes of the right are not affected by the fact that the change in status did not occur.
 
 
 20
 In the case at bar we are not concerned with any surviving children. Nor are we concerned with a lump sum allowance.[18] The allowance here was to the widow, for her support and maintenance, and to be paid monthly. Upon a change in her status she would no longer be entitled to support and maintenance from her deceased husband's estate. Hence, the allowance was terminable and does not qualify as an estate tax marital deduction.
 
 
 21
 In No. 7312 the judgment is affirmed and in No. 7313 the judgment is reversed with directions to dismiss the action.
 
 
 
 Notes:
 
 
 [1]
 Substantially the same provision appears in § 2053 (a) (2) of the Internal Revenue Code of 1954
 
 
 [2]
 This section covers deductions from gross income
 
 
 [3]
 The administration expenses were $30,000 in 1953 and $70,000 in 1954. Of the 1954 amount $33,249.28 was claimed as an income tax deduction and the balance as an estate tax deduction
 
 
 [4]
 Brown v. Commissioner, 10 Cir., 74 F. 2d 281, 286; Adams v. Commissioner, 8 Cir., 110 F.2d 578, 583
 
 
 [5]
 See Trust of Bingham v. Commissioner, 325 U.S. 365, 375, 65 S.Ct. 1232, 89 L. Ed. 1670
 
 
 [6]
 Section 39.162-1(a) of Treasury Regulations 118 (1939 Code) as supplemented by Rev.Rul. 240, 1953-2 Cum.Bull. 79, 80-81
 
 
 [7]
 Neither § 642(g) of the 1954 Code nor Treasury Regulations on Income Tax (1954 Code) § 1.642 (g)-1 differ in any material respect from the comparable section and regulations under the 1939 Code
 
 
 [8]
 See Ackerman v. United States, 10 Cir., 318 F.2d 402, 404
 
 
 [9]
 See Richardson v. Commissioner, 2 Cir., 126 F.2d 562, 569, 140 A.L.R. 705; Dexter Sulphite Pulp and Paper Company v. Commissioner, 23 B.T.A. 227, 235
 
 
 [10]
 See Riley Investment Co. v. Commissioner, 311 U.S. 55, 58-59, 61 S.Ct. 95, 85 L.Ed. 36; Klinghamer v. Brodrick, 10 Cir., 242 F.2d 563, 564; Ackerman v. United States, 10 Cir., 318 F.2d 402, 404; Shull v. Commissioner, 4 Cir., 271 F.2d 447, 448; Raymond v. United States, 6 Cir., 269 F.2d 181, 183-184; Estate of E. P. Lamberth v. Commissioner, 31 T.C. 302, 312-313; 10 Mertens Law of Federal Income Taxation § 60.19, pp. 63, 64. United States v. Van Keppel, 10 Cir., 321 F.2d 717, 1963, did not concern an election and is not in point
 
 
 [11]
 Estate of Edward A. Cunha v. Commissioner, 9 Cir., 279 F.2d 292, 295, 298, certiorari denied 364 U.S. 942, 81 S.Ct. 460, 5 L.Ed.2d 373. See Rev.Rul. 83, 1953-1 Cum.Bull. 395 and Rev.Rul. 56-26, 1956-1 Cum.Bull. 447
 
 
 [12]
 58 Okl.St.Ann. § 314 reads thus: "If the amount set apart as aforesaid be less than that allowed, and insufficient for the support of the surviving spouse and children, or either, or, if there be no such personal property to be set apart, and if there be other estate of the decedent, the court may in its discretion make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstances during the progress of the settlement of the estate, which, in case of an insolvent estate, must not be longer than one year after granting letters testamentary, or of administration."
 
 
 [13]
 Cf. United States v. Mappes, 10 Cir., 318 F.2d 508, 510
 
 
 [14]
 In a prefatory statement on "Evolution of Oklahoma Statutes" it is said in 1-4 Okl.St.Ann. (Perm. Ed.) pp. XI-XII, that: "Our chapter on probate procedure was adopted from Dakota, and it would appear that Dakota copied it from California in 1877."
 
 
 [15]
 Criqui v. Blaw-Knox Corporation, 10 Cir., 318 F.2d 811, 812-813. See also Dallison v. Sears, Roebuck and Co., 10 Cir., 313 F.2d 343, 347
 
 
 [16]
 58 Okl.St.Ann. (Perm. Ed.) § 314
 
 
 [17]
 Ibid
 
 
 [18]
 Cf. Jackson v. United States, 9 Cir., 317 F.2d 821, certiorari granted, 374 U.S. 894, 84 S.Ct. 172, 11 L.Ed.2d 123