March 30, 1993
[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1938

PETER A. JOHNSON AND CLAIRE P. LYON,

Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES TAX COURT

[Hon. Theodore Tannenwald, U.S. Tax Court Judge]

Before

Selya, Cyr and Boudin,
Circuit Judges.

Peter A. Johnson and Claire P. Lyon on brief pro se.

James A. Bruton, Acting Assistant Attorney General, Gary R.

Allen, Jonathan S. Cohen and Regina S. Moriarty, Attorneys, Tax

Division, on brief for appellee.

P. Lyon, appeal a decision of the Tax Court that sustained a
Per Curiam. The appellants, Peter A. Johnson and Claire

Tax Court's decision.
appellants' joint income tax return for 1986. We affirm the
deficiency determined by the Internal Revenue Service on the

I

-2-
shareholders of liquidating corporations. Under 26 U.S.C.
Hampshire. Mr. Johnson is a certified public accountant and

regulation. In 1980, Mr. Johnson and Ms. Lyon incorporated
primarily to law firms practicing in the field of energy

Peter A. Johnson Associates, Inc. (PAJA), through which Mr.
for a number of years made his living as a consultant,

corporation initially issued 100 shares of stock: 51 shares
Johnson then carried on his consulting business. The
Mr. Johnson and Ms. Lyon are married and reside in New

to Mr. Johnson and 49 shares to Ms. Lyon. The corporation

Trust.

consulting work tapered off. Late in 1986, with PAJA
he accepted a salaried position at a hospital and his

relatively dormant, Mr. Johnson and Ms. Lyon decided to
Mr. Johnson worked full-time for PAJA until 1985, when

shareholders.
liquidate the company and distribute its assets to the
later sold 8 more shares to an entity known as PAJA Pension

At the time, the tax laws offered a choice to
331, they could recognize all of the distributed assets on

their income tax returns for the year in which the

liquidation occurred, but pay taxes on the distribution at

the capital gains rate, which was lower than the rate applied

to "ordinary income" such as wages or dividends. Or, they

could elect to treat the distribution under 26 U.S.C. 333.

Section 333 required the shareholders to allocate the

distributed assets to two categories: (1) earnings and

profits, and (2) all other assets. The shareholders had to

declare the portion of the distribution that came from

earnings and profits as ordinary income on their returns for

the year in which the liquidation occurred, and pay taxes on

it at the higher income tax rate. However, with respect to

the portion of the distribution that took the form of the

corporation's other assets, the shareholders could postpone

recognizing any gain until they themselves sold the assets.

Roughly speaking, then, Section 333 was a good deal only for

shareholders of "a corporation holding appreciated property

but having little or no earnings and profits . . . ." B.

Bittker & J. Eustice, Federal Income Taxation of Corporations

and Shareholders at 11.62 (5th ed. 1987). If the

corporation had significant earnings and profits, the

shareholders were better off electing Section 331,

recognizing a gain immediately on the entire distribution,

-3-

but avoiding taxation of the earnings and profits at the

higher income tax rates.

This case concerns the appellants' election to treat

PAJA's distributed assets under Section 333 when they

dissolved the corporation at the end of 1986. Mr. Johnson

knew that Congress had repealed Section 333, effective

January 1, 1987. See Pub.L. 99-514, Title VI, 631(e)(3),

Oct. 22, 1986, 100 Stat. 2273. He thus felt some urgency to

liquidate PAJA by year's end. But, because personal business

intervened, he did not sit down to the task until December

28, 1986.

Mr. Johnson and Ms. Lyon executed a number of documents

on December 28. The first was a Form 1120-A, a "Short-Form

Corporation Income Tax Return" for PAJA. This document

showed that PAJA had assets of $132,249, of which "retained

earnings" constituted $96,311. With such a significant

amount of earnings -- which the shareholders would have to

declare as ordinary income under Section 333, but could treat

as a capital gain under Section 331 -- liquidation under

Section 333 was an unwise choice.

However, the appellants made it. For reasons never

fully explained, Mr. Johnson figured PAJA's "earnings and

profits" at zero when deciding whether to elect Section 331

or Section 333. Consequently, he and Ms. Lyon made a written

shareholder resolution to liquidate the corporation under

-4-

Section 333. Each of them executed and filed with the IRS a

Form 964, which bears the caption "Election of Shareholder

under Section 333 Liquidation." Mr. Johnson also executed

and filed, on behalf of the corporation, a Form 966,

captioned "Corporate Dissolution or Liquidation," which

identified Section 333 as the "Section of the Code under

which the corporation is to be dissolved or liquidated."

Mr. Johnson then wrote checks on PAJA's corporate account

that distributed more than $137,000 in assets: $64,607 to

himself, $63,632 to Ms. Lyon, and $9,622 to PAJA Pension

Trust.

Four months later, when Mr. Johnson and Ms. Lyon filed

their joint income tax return for 1986, they should have

attached copies of the already-filed Forms 964, to alert the

IRS to their election, see 26 C.F.R. 1.333-3 and 1.333-

6(a)(5), and treated their share of the distributed assets

pursuant to Section 333 -- that is, by declaring the portion

attributable to earnings and profits as ordinary income, but

postponing recognition of any gain on the remainder.

The appellants did not do what their election required

them to do. They did not attach Form 964; in fact, their

income tax return contained no mention of the liquidation.

It characterized all of the money they had received from the

liquidation as proceeds of a "sale" of PAJA stock, and

treated the entire distribution as a capital gain. This

-5-

calculation would have been consistent with a liquidation

under Section 331, or with a simple sale of stock

unaccompanied by a liquidation, but it did not jibe with the

Section 333 election the appellants had made the previous

December.

The IRS accepted the appellants' return and took no

further action until an audit in 1988 revealed the

inconsistency between the election under Section 333 and the

tax treatment given the distribution in the appellants'

return. The IRS then rejected the appellants' efforts to

revoke their Section 333 election, recalculated their tax

liability to take the election into account, determined a

deficiency of $24,790, and added penalties for negligence and

for making a substantial understatement of taxes owed. The

appellants sought review in the Tax Court, which held a one-

day trial and sustained the IRS' actions. This appeal

followed.

II

Mr. Johnson and Ms. Lyon say that they are not liable

for taxes calculated according to Section 333 for two

reasons: first, because they never made a valid election; and

second, because their election, even if formally valid, was

based on a mistake and was therefore revocable.

A

-6-

The appellants point to a number of errors they say they

made while attempting to elect Section 333 and liquidate

PAJA, and assert that strict compliance with all of Section

333's requirements is necessary in order to enjoy the

benefits (or in this case, suffer the detriments) of the

statute. This is not completely true. The level of

compliance needed to make a valid tax election varies

according to the nature of the requirement. The IRS "'may

insist upon full compliance with [its] regulations' when the

regulatory requirements relate to the substance or essence of

a statute, but [the Tax Court has] held that substantial

compliance with regulatory requirements may suffice when such

requirements are procedural and when the essential statutory

purposes have been fulfilled." American Air Filter Co. v.

Commissioner, 81 T.C. 709, 719 (1983) (citations omitted).

See also Dunavant v. Commissioner, 63 T.C. 316 (1974) (same,

construing Section 333).

Two of the regulations which the appellants say they

violated -- 26 C.F.R. 1.333-6, which required them to

provide supplemental information about the liquidation, and

26 C.F.R. 1.333-3, which required them to file a copy of

Form 964 along with the original at the time of election --

plainly do not go to the "essence" of the statute and are

therefore "procedural" in the sense discussed above. Their

breach will not defeat the election.

-7-

The other asserted defects require some discussion.

First, the appellants say that the distribution was not "in

complete cancellation or redemption of all the stock," 26

U.S.C. 333(a)(1), because their Forms 964 inaccurately

listed the number of shares each held. Mr. Johnson owned 51

shares at the time of the election, but listed only 47 in his

Form 964; Ms. Lyon owned 49 shares, but listed only 46.

The premise does not support the conclusion. Nothing in

the record causes us to believe that, in return for the

company's assets, Mr. Johnson and Ms. Lyon (and PAJA Pension

Trust) actually gave up anything less than all of their

shares in PAJA. And if that is so, then the distribution was

"in complete cancellation or redemption of all the stock."

Putting the wrong count on the forms did not affect the

substance of the liquidation and therefore did not go to the

essence of the statute.

Second, the appellants claim that they failed to make a

timely election. Section 333(d) says: "The filing [of the

written election form] must be within 30 days after the date

of the adoption of the plan of liquidation." The cases

indicate that this is an "essential" requirement. Shull v.

Commissioner, 291 F.2d 680, 682-85 (4th Cir. 1961); Kelley v.

Commissioner, 10 T.C.M. 143, 146 (1951). However, whether

and when a plan of liquidation was adopted "is a question of

-8-

fact ordinarily for the Tax Court," Shull, 291 F.2d at 684,

and thus subject to review only for clear error.

We see no error in the Tax Court's finding that "the

evidence clearly establishes December 28, 1986 [when the

appellants executed a written shareholder resolution], as the

date of the adoption of the plan of liquidation." It is true

that Mr. Johnson testified that he and Ms. Lyon made a

"decision" to liquidate PAJA sometime in November 1986. It

is also true that Section 333 does not require "that a plan

of liquidation must be in writing or in any particular form."

Shull, 291 F.2d at 682.

But the statute does by its terms require the

shareholders to "adopt" some "plan" of liquidation. In

Shull, the Fourth Circuit held that the shareholders had

"adopted" a plan of liquidation before they made a formal

resolution to that effect only because the shareholders had

previously "acted deliberately . . . and had gone so far in

the actual execution of a plan of liquidation as to dissolve

the corporation and terminate its existence for all purposes

other than liquidation. . . ." 291 F.2d at 684-85. Nothing

of this sort happened here. The resolution executed on

December 28 was the first manifestation of the appellants'

intention to dissolve PAJA. In the absence of any evidence

to corroborate Mr. Johnson's testimony, the Tax Court was

entitled to find either that the "decision" in November never

-9-

happened, or that it happened but was too indefinite an event

to trigger the statutory filing requirement, and to conclude

that the appellants did not "adopt" a plan of liquidation

within the meaning of Section 333(d) until December 28 -- the

same day that they made the election and filed Form 964.

Third, the appellants contend that PAJA failed to

distribute all of its assets before the end of December 1986,

thus violating Section 333(a)(2), which says that the

benefits of election are available only if "the transfer of

all the property under liquidation occurs within some one

calendar month." Since the bulk of the distribution occurred

in December 1986, when Mr. Johnson wrote corporate checks to

himself, his wife and PAJA Pension Trust, the entire

transaction had to be completed during that same "one

calendar month." But, the appellants say, the distribution

was not completed until March 1987, when Spriggs, Bode &

Hollingsworth (one of PAJA's law firm clients) made a payment

of $6,727 for "services rendered during November 1, 1986

through March 10, 1987."

We agree with the Tax Court that only some

"indeterminate" portion of this payment -- the part

attributable to services rendered before PAJA was dissolved

at the end of December 1986, and thus "earned" by the company

-- can be considered a "distribution" from PAJA to its

shareholders. Any money paid for services rendered after the

-10-

dissolution was money that Mr. Johnson earned on his own

behalf.1

The late distribution of such a relatively small amount

-- something less than $6,727 and thus less than 5% of the

PAJA's assets -- does not affect the legitimacy of the

election. A "liberality of approach" exists with respect to

tax statutes that require corporate liquidations to be

accomplished within specific time limits. Cherry-Burrell

Corp. v. United States, 367 F.2d 669, 677 (8th Cir. 1966)

(Blackmun, J.). Thus, when a tax statute on its face

requires distribution of all corporate assets within a

certain period in order to qualify for a tax benefit, the

failure to dispose of a minor portion of the assets within

the time allotted will not defeat the taxpayer's choice. See

Mountain Water Co. v. Commissioner, 35 T.C. 418 (1960)

(calling this the "de minimis rule"); Estate of Lewis B.

Meyer v. Commissioner, 15 T.C. 850 (1950), rev'd on other

grounds 200 F.2d 592 (5th Cir. 1952) (it "would be out of

line with [the predecessor to Section 333] . . . to hold that

the failure, within the calendar month, physically to deliver

1. For the same reason, a check received from a second
client in March 1987 was not part of the distribution of
corporate assets because it represented payment of Mr.
Johnson's monthly retainer for January, February, and March
1987 -- i.e., money earned after the dissolution by Mr.
Johnson, not by the corporation.

-11-

less than 6 percent in book value of the distributed assets

destroys the election. . . ").

Finally, the appellants would have us rule that, because

they reincorporated PAJA in 1991, they are not bound by the

election they made more than four years earlier. They supply

no useful authority for this proposition. The cases and

revenue rulings they cite are inapposite; all involved the

question whether a complete liquidation had occurred in the

first place. See, e.g., Telephone Answering Service Co. v.

Commissioner, 63 T.C. 423 (1974). In this case, the record

shows that the appellants distributed PAJA's assets in the

successful pursuit of a complete and permanent liquidation.

Their belated revival of the corporate form, done after the

IRS had determined a tax deficiency (and for no apparent

reason other than to escape the consequences of that

determination), "did not alter the character" of the previous

distribution or affect the validity of their election. See

Kennemer v. Commissioner, 96 F.2d 177, 178-89 (5th Cir.

1938).

B

Even if their election was procedurally valid, the

appellants say, the IRS should have allowed them to revoke it

because it was based on the mistaken belief that PAJA had no

"earnings and profits" to distribute to its shareholders.

Although (with one exception not relevant here) the

-12-

regulations implementing Section 333 say flatly that a

written election to be governed by that provision "cannot be

withdrawn or revoked," 26 C.F.R. 1.333-2(b)(1), the

appellants believe that a taxpayer may nevertheless obtain

relief from an election made as the result of a mistake.

The courts have on occasion allowed taxpayers to revoke

mistaken elections. See, e.g., Meyer's Estate v.

Commissioner, 200 F.2d 592 (5th Cir. 1952); McIntosh v.

Wilkinson, 36 F.2d 807 (E.D.Wis. 1929); DiAndrea, Inc. v.

Commissioner, 47 T.C.M. 731 (1983) (revoking election under

Section 333). However, in each of these cases the taxpayer

made what the court characterized as a "mistake of fact." In

deciding whether to allow taxpayers to revoke otherwise-valid

elections, the courts have consistently distinguished between

mistakes of fact, which may justify revocation, and mistakes

of law, which will not. See Bankers & Farmers Life Ins. Co.

v. United States, 643 F.2d 234, 238 (5th Cir. 1981); Shull v.

Commissioner, 271 F.2d 447, 449 (4th Cir. 1959); Raymond v.

United States, 269 F.2d 181, 183 (6th Cir. 1959); Grynberg v.

Commissioner, 83 T.C. 255, 261-63 (1984); Cohen v.

Commissioner, 63 T.C. 527 (1975). "Oversight, poor judgment,

ignorance of the law, misunderstanding of the law,

unawareness of the tax consequences of making an election,

miscalculation, and unexpected subsequent events have all

been held insufficient to mitigate the binding effect of

-13-

elections made under a variety of provisions of the [Internal

Revenue] Code." Estate of Stamos v. Commissioner, 55 T.C.

468, 474 (1970) and cases cited therein.

The appellants do not question the wisdom of this

distinction, but argue that the Tax Court erroneously

described their mistake as one of law. We agree with the Tax

Court. The mistake in this case was Mr. Johnson's stated

belief that PAJA had no "earnings and profits," and thus that

the shareholders could defer recognition of the entire

distribution under Section 333. Depending on its source,

this could have been a mistake of fact or a mistake of law.

"[M]istakes of fact occur in instances where either (1) the

facts exist, but are unknown, or (2) the facts do not exist

as they are believed to." Hambro Automotive Corp. v. United

States, 603 F.2d 850, 855 (C.C.P.A. 1979). If Mr. Johnson had

decided that PAJA had no "earnings and profits" because he

believed it had no money in the bank, then his mistake would

have been a mistake of fact. But, as the Tax Court found, it

is "difficult to believe" that the appellants were unaware of

PAJA's cash reserves when they made the election on December

28, 1986, for on the same day, Mr. Johnson, as president of

PAJA, executed a corporate tax return indicating that the

company had more than $96,000 in "retained earnings," and

wrote checks to himself, Ms. Lyon and PAJA Pension Trust,

-14-

drawn on the corporate bank account, totaling more than

$137,000.

Since the appellants knew how much money the corporation

had in the bank when they made the election, the only

plausible explanation for their mistake is that they did not

know that the money constituted "earnings and profits"

subject to taxation as ordinary income under Section 333.

See GPD, Inc. v. Commissioner, 508 F.2d 1076, 1082 (6th Cir.

1974) (corporation's "earnings and profits" may not bear an

"exact relation" to earnings as determined by "normal

corporate accounting methods"); Bennett v. United States, 427

F.2d 1202, 1208 (Ct.Cl. 1970) ("'earnings and profits' . . .

is a tax, not an economic concept"). Thus, they made a

mistake of law, which occurs "where the facts are known, but

their legal consequences are not known or are believed to be

different than they really are," Hambro Automotive Corp. v.

United States, 603 F.2d at 855 (emphasis omitted), and may

not revoke their election.

III

The IRS made two "additions" to the appellants' tax

liability. First, it added $1,240 under 26 U.S.C.

6653(a)(1), which says: "If any part of the underpayment . .

. of tax required to be shown on a return is due to

negligence (or disregard of rules or regulations), there

shall be added to the tax an amount equal to 5 percent of the

-15-

underpayment." "Negligence in this context is a lack of due

care or failure to do what a reasonable and ordinarily

prudent person would do under the circumstances. The

Commissioner's imposition of a negligence addition is

presumptively correct, leaving the [appellants] with the

burden of proving that their underpayment was not due to

negligent or intentional rules violations." McMurray v.

Commissioner, Nos. 92-1513 and 92-1628, slip op. at 13 (1st

Cir. February 9, 1993). We review the Tax Court's findings

on negligence issues only for clear error. Leuhsler v.

Commissioner, 963 F.2d 907, 910 (6th Cir. 1992).

There was no error. The "underpayment" in this case

occurred because the appellants, having elected in December

1986 to treat their taxes under Section 333, instead prepared

their tax return the following April as if they had either

elected Section 331 or made a simple sale of stock

unaccompanied by a liquidation. Under the circumstances, and

absent a compelling explanation to the contrary, one might --

as the Tax Court appears to have done in its Supplemental

Memorandum Opinion -- infer that the "switch" here was

deliberate, since making it promised to save the appellants

some $24,000, and since the appellants obscured the de facto

revocation of their previous election by describing the

distribution as a "sale" rather than a liquidation, and by

neglecting to attach Form 964 to their return. But the

-16-

negligence penalty was appropriate even if the switch was

accidental; like the Tax Court, we see nothing reasonable

about a certified public accountant's failure to calculate

his tax liability in accordance with his own election and the

Code's explicit instructions.2

The IRS also added $6,198 under 26 U.S.C. 6661(a).

Section 6661(a) imposes a 25% addition to an underpayment if

"there is a substantial understatement of income tax for any

taxable year." Section 6661(b)(1)(A) defines a substantial

understatement as one that exceeds the greater of (1) 10% of

the tax for the year or (2) $10,000. Section 6661(b)(2)(B)

reduces the understatement by any amount attributable to (i)

the tax treatment of an item if there was "substantial

authority" for the treatment, or (ii) any item with respect

to which the relevant facts affecting its tax treatment are

adequately disclosed in the return or a statement attached to

it.

The appellants understated their taxes by more than

$24,000, which was almost 50% of the tax for the year.

2. Ms. Lyon's reliance on her husband's expertise does not
excuse her negligence. Although Section 6653(b), which
authorizes an addition to tax for fraud, contains a "special
rule for joint returns" that allows the IRS to penalize a
spouse only to the extent that the underpayment is due to her
own fraud, 26 U.S.C. 6653(b)(3), Section 6653(a), which
authorizes the penalty for negligence, contains no such
qualification. See Langer v. Commissioner, 59 T.C.M. 740

(1990) (sustaining negligence penalty against both spouses
where husband, an IRS agent, prepared the erroneous return).

-17-

However, they claim to have satisfied the disclosure

requirement with respect to the entire understatement

because, when they made the election in December 1986, they

filed Forms 964 and 966 with the IRS. But this "disclosure"

was inadequate for two reasons. First, it was not made on

the return or on a statement attached to the return. 26

C.F.R. 1.6661-4(a) and (b). Second, filing a Form 964 at

the time of liquidation, nearly four months before a tax

return is due, is not an act that "reasonably may be expected

to apprise the Internal Revenue Service of the identity of

the item, its amount, and the nature of the potential

controversy concerning the item." 26 C.F.R. 1.6661-

4(b)(1)(iv) and 1.6661-4(b)(4). That is precisely why the

regulations require the shareholder to file Form 964 twice --

once upon making the election and again with his income tax

return. 26 C.F.R. 1.333-3 and 1.333-6(a)(5).

The IRS has the authority to waive all or part of a

Section 6661 addition to tax "on a showing by the taxpayer

that there was reasonable cause for the understatement . . .

and that the taxpayer acted in good faith." 26 U.S.C.

6661(c). The most important factor in waiver decisions is

"the extent of the taxpayer's effort to assess [his] proper

tax liability under the law . . . ." 26 C.F.R. 1.6661-

6(b).

-18-

We review the IRS' waiver decision only for abuse of

discretion. Heasley v. Commissioner, 902 F.2d 380, 385 (5th

Cir. 1990); Mailman v. Commissioner, 91 T.C. 1079, 1083-84

(1988). For the reasons already stated, we are confident

that the IRS did not abuse its discretion by concluding that

reasonable people acting in good faith would not (a) fail to

pay the tax in accordance with their election, and (b) fail

to notify the IRS that they were, in effect, revoking that

election.

The appellants' Motion for Oral Argument is denied.

The judgment of the Tax Court is affirmed.

-19-