**Frank T. SHULL and Ann R. Shull, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 8250.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 24, 1961.

Decided June 13, 1961.

Raymond F. Garrity, Washington, D. C. (Carl A. Phillipps, Washington, D. C., on brief), for petitioners.

John J. Pajak, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This case is before us for the second time. When it was previously here, we affirmed the decision of the Tax Court that stockholders who had certified to the Commissioner that a plan of liquidation was adopted at a stockholders' meeting held on March 31, 1952 could not, in contradiction of that certification, contend that no meeting was held on that date or that an effective plan of liquidation was adopted at some earlier meeting. We, nevertheless, remanded the case to the Tax Court to consider the contention that, notwithstanding the stockholders' certification, a plan of liquidation must have been adopted not later than the date of

the dissolution of the corporation.[1] On remand, a further hearing was held after which the Tax Court concluded that the issuance of a certificate of dissolution by the State Corporation Commission, upon the written consent of all of the stockholders, did not establish the existence of a plan of liquidation at that time.[2] It adhered to its former view that the plan of liquidation was not adopted until the subsequent meeting of its stockholders during which they purported to adopt a plan of liquidation.[3] The stockholders, seeking to avoid their election to be taxed under the provisions of § 112(b) (7) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (7), have again petitioned this Court to review the decision of the Tax Court.

As more fully appears from our earlier opinion, these misadvised and misguided taxpayers, relying upon what they understood to be the advice of their accountant, undertook to dissolve the corporation, of which they were the sole stockholders, and to bring themselves within the provisions of the 30-day liquidation section, under which recognition of gain on the unrealized appreciated value of fixed assets when distributed to them would be postponed, but the value of other assets distributed to them would be taxed as ordinary income. Apparently their advisor and, certainly, they did not realize that bringing themselves within the provisions of § 112(b) (7) would be very much to their disadvantage, but realization of that fact came painfully to them when the Revenue Agent filed his report.

Their purpose was misconceived and the execution of it was slovenly. The record contains what purports to be minutes of a succession of stockholders' meetings beginning in January 1952, in which the purpose to liquidate is declared and in which reference is made to instructions to lawyer and accountant to proceed promptly with the business of effectuating that purpose. Despite these repeated declarations, however, nothing definitive was done until the lawyer filed the written consent of the stockholders to dissolution with Virginia's State Corporation Commission on March 27, 1952. The State Corporation Commission on that date in its Certificate of Dissolution declared that the corporation "has ceased to exist and shall stand dissolved and its Board of Directors shall proceed to settle up and adjust its business and affairs." In April, the taxpayer's accountant wrote to the lawyer acknowledging receipt of information that the Certificate of Dissolution had been issued (he referred to it as "authority for the liquidation of the corporation") and suggesting that final adoption by the stockholders of a plan to liquidate should fall within the period March 20–24, then some weeks past, and suggesting that minutes evidencing such a meeting should be prepared by the attorney. One may infer that the minutes of the meeting purportedly held on March 31 were the result of the April correspondence.

When the stockholders filed with the Commissioner their election to be taxed under § 112(b) (7) and certified to him that a plan of liquidation had been adopted on March 31, 1952, they foreclosed themselves from contending that a plan of liquidation had been adopted at a meeting held earlier in the year, though they produced minutes of purported meetings containing resolutions which would qualify as a plan of liquidation. Subsequent alteration or fabrication of minutes in the loose-leaf minute book of the closely held corporation is so easily accomplished that a rule which would permit stockholders to contradict their certification by contending that they acted on

---

1. Shull v. Commissioner, 4 Cir., 271 F.2d 447.

2. 34 T.C. 533.

3. The resolution adopted by the stockholders shows that it was contemplated that the assets of the corporation should be distributed in kind, and that the distribution should occur in the month of April 1952. Only in those respects did it add anything to the consent to dissolution which the stockholders had filed with Virginia's State Corporation Commission.

some day other than the one certified would give to unscrupulous taxpayers the undue advantage of an opportunity to reappraise their election long after the event. The voluntary dissolution of a corporation, on the other hand, is such a definitive and irrevocable act done under the hand and seal of the Virginia State Corporation Commission that there is no room for a subsequent denial or alteration of the fact. If the issuance of such a certificate, itself, establishes the existence at that time of a plan of liquidation, recognition of that fact does not open the door to fraud, nor is it a contradiction of the stockholders' certificate that they purported to adopt a plan of liquidation at a later date. Thus, we are not here concerned with the erection of safeguards to prevent taxpayers from taking subsequent factual positions which contradict their earlier certification of fact. We accept the certified fact that the stockholders undertook the adoption of a plan of liquidation on March 31, but whether the certified fact had legal significance is still an open question, which should not be foreclosed by the certificate.

Under § 13–62 of the Code of Virginia of 1950 provision is made for issuance of a certificate of dissolution upon the filing of a written consent thereto signed by every stockholder without the necessity of a formal stockholders' meeting. Under § 13–70, a dissolved corporation has a qualified existence for a period not exceeding three years for the purpose of winding up its affairs "but not for the purpose of continuing the business for which (it was) established." Under § 13–72, the directors become trustees of the corporate assets and are given the power to settle the corporate affairs, sell and convey its property, and to divide its assets among its stockholders in final liquidation. If the directors do not complete their work within three years following the date of dissolution, and under certain other circumstances, a receiver may be appointed under the provisions of § 13–73 to wind up the corporate affairs and complete its liquidation.[4]

It is apparent from Virginia's governing statutes that upon the issuance of the Certificate of Dissolution on March 27, 1952, all the corporate assets passed to the directors as trustees who, without further action on the part of the stockholders, had full power to proceed with the liquidation of the corporation, including the specific power to sell and convey its assets and to distribute the proceeds among its stockholders. The trustees were prohibited by statute from continuing the business of the corporation. The corporation was no longer alive in its former sense. It had a qualified existence, but only for the purpose of liquidation. Upon issuance of the Certificate of Dissolution, the corporation was clearly in a status of liquidation. The stockholders had stripped from the corporation its old clothes and placed upon it the shroud of liquidation. Since they had acted deliberately, they would hardly be heard to say they had no plan to do what they had done.

There is nothing in § 112(b)(7) which requires that a plan of liquidation must be in writing or in any particular form.

Paragraph (A)[5] simply provides that if liquidation occurs within one calendar

4. The references are to the sections of Virginia's Code in effect in 1952 when the taxpayers acted to dissolve the corporation they owned. There was a general revision of Virginia's laws relating to corporations in 1956, which effected a number of changes.

5. "(A) General rule. In the case of property distributed in complete liquidation of a domestic corporation, if—

"(i) the liquidation is made in pursuance of a plan of liquidation adopted after December 31, 1950, whether the taxable year of the corporation began on, before, or after January 1, 1951; and

"(ii) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within some one calendar month in 1951, 1952, or 1953—then in the case of each qualified electing shareholder (as defined in subparagraph (C)) gain upon the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subparagraphs (E) and (F)."

month, the distribution in complete liquidation will result in limited recognition of gain to electing shareholders with respect to the shares they own at the time of the adoption of the plan of liquidation.

Paragraph (D)[6] provides that the election must be filed within thirty days after the adoption of the plan of liquidation, but nowhere does § 112(b) (7) purport to declare how a plan of liquidation is to be adopted or how its adoption is to be evidenced.

Paragraph (C) does provide that the election of an individual shall be ineffective unless stockholders having not less than eighty per cent of the total combined voting value of all classes of stock entitled to vote on the adoption of the plan of liquidation make similar elections, but this conditional limitation upon the right of stockholders to make an election does not import into Paragraph (A) a requirement that the plan shall have been adopted at an open stockholders' meeting called for that purpose or suggest that the unanimous written consent of all stockholders to a plan of liquidation is not an effective adoption of the plan within the meaning of § 112 (b) (7).

It appears, therefore, that when the two stockholders who owned the entire outstanding stock of the corporation signed and filed their written consent to its dissolution under the provisions of Virginia's laws a written plan of liquidation was effectively adopted. The Certificate of Dissolution, which then issued, and Virginia's statutes fully authorized the directors to do everything necessary to accomplish the liquidation of the corporation without further action by the stockholders.

In Helvering v. Elkhorn Coal Co., 4 Cir., 95 F.2d 732, this Court refused to restrict its attention to one of a series of transactions in order to determine its tax consequences. The "step-transaction doctrine" was followed, which requires that the transaction be viewed in its entirety and that its substance prevail over its form.

In Gossett v. Commissioner, 4 Cir., 59 F.2d 365, this Court held that what purported to be an ordinary dividend declared out of corporate surplus was in fact a liquidating dividend, though there was no formal plan of liquidation, for it was extraordinary in amount and followed a sale of all corporate assets and an authorization by the stockholders for the directors to proceed, after the sale, to dissolve the corporation. Similar results have been reached in other cases[7] in which it has been held that the absence of a formal resolution of dissolution or liquidation is not determinative, but that a distribution is made in liquidation if in furtherance of an intent to liquidate.

These general principles have found specific application in the context of the problem with which we deal. In Burnside Veneer Co. v. Commissioner, 6 Cir., 167 F.2d 214, 217, the stockholders of Burnside consented unanimously to its dissolution. The consents were filed with the North Carolina Secretary of State, upon which a Certificate of Dissolution was issued. Subsequently the stockholders, wishing to avail themselves of the tax advantage of a loss, sought to avoid the nonrecognition provisions of § 112 (b) (7) of the 1939 Code and, to that end, contended that no plan of liquidation had been adopted. The Commissioner, of course, contended that a plan of liquidation had been adopted, and the Tax Court and the Court of Appeals for the

6. "(D) Making and filing of elections. The written elections referred to in subparagraph (C) must be made and filed in such manner as to be not in contravention of regulations prescribed by the Commissioner with the approval of the Secretary. The filing must be within thirty days after the adoption of the plan of liquidation, and may be by the liquidating corporation or by the shareholder."

7. Canal-Commercial Trust & Savings Bank v. Commissioner, 5 Cir., 63 F.2d 619; Holmby Corporation v. Commissioner, 9 Cir., 83 F.2d 548; Kennemer v. Commissioner, 5 Cir., 96 F.2d 177.

Sixth Circuit sustained his view. The Court of Appeals said:

"We have little difficulty in concluding that the Tax Court ruled correctly that a plan of liquidation existed within the meaning of the statute. A plan is a method of putting into effect an intention or proposal. The statute does not require a formal plan. Here the proposal was the liquidation, and the method proposed of effecting the liquidation was the plan. The express provisions of the resolutions directing that the corporation 'be immediately dissolved' and ordering the officers to take all necessary and proper steps to that end, under the North Carolina statutes which supply the details of procedure, together with the circumstances surrounding the liquidation, were pertinent evidence not only that there was an intention to dissolve the corporation, but that there was in fact an orderly method of liquidation contemplated."

A somewhat similar problem was before the Tax Court in Mountain Water Company of La Crescenta, 35 T.C. No. 50. There it appeared that all of the corporation's operating assets were condemned. The condemnation award was accepted by the corporation's directors on April 25, 1955. The resulting transfer resulted in the receipt of substantially more than the adjusted basis of the transferred assets. The stockholders were then canvassed for their consent to dissolution and liquidation, and the necessary consents having been received by June 7, 1955, the directors authorized the officers to execute and file a certificate of election to dissolve under California's laws. Dissolution was thus accomplished and actual liquidation followed. The water company sought the protection of § ·337 of the 1954 Code, 26 U.S.C.A. § 337, to avoid recognition to it of its gain on the transfer of its assets, and the Commissioner contended that no plan of liquidation had been adopted prior to the transfer as required by § 337. The Tax Court held that the plan of liquidation had been

adopted prior to the acceptance of the condemnation award on April 25, 1955, notwithstanding the fact that no meeting of the stockholders was ever held and their consent to dissolution was obtained after April 25, 1955. It reached this conclusion because it was apparent that upon the transfer of all of its operating assets the corporation could not continue its business and liquidation was its only alternative. Acceptance of the award, in the opinion of the Tax Court, committed the company to liquidation. Subsequently obtaining the consent of the stockholders, filing the certificate of dissolution and making distribution of the assets were but formalities all accomplished pursuant to the plan of liquidation evidenced on April 25, 1955 only by the decision to accept the condemnation award.

More irrevocably here, the stockholders on March 27, 1952, when they put the company into voluntary dissolution, irrevocably committed the company and themselves to liquidation under a plan fully supplied by the statutes under which they acted, in which the procedure to be followed in liquidation was specified and all of the necessary powers and authority were conferred upon the directors who were charged with the accomplishment of the liquidation. When the stockholders thus launched the corporation upon its course of liquidation, they must then have had a plan of their course, and their plan was sufficiently evident in their conduct, in their written consent and in the statutes governing the subsequent liquidation. See, generally, Pustilnik's Note, "Liquidation of Closely-Held Corporations Under Section 337," 16 Tax Law Review 255, particularly 259, et seq.

 Unquestionably, whether a plan of liquidation has or has not been adopted is a question of fact ordinarily for the Tax Court. When the stockholders acted deliberately, however, and had gone so far in the actual execution of a plan of liquidation as to dissolve the corporation and terminate its existence for all purposes other than liquidation, we find no escape from the conclusion

that a plan of liquidation had been adopted. If subsequently, the stockholders in a formal way declared their intention to do what they already had done, the declaration was of no controlling significance.

We conclude that the stockholders' election to be taxed under § 112(b) (7), filed more than thirty days after March 27, 1952, was ineffective and that their gain should be recognized and taxed to them under the provisions of § 115, 26 U.S.C.A. § 115. For that purpose, the case is remanded to the Tax Court.

Reversed and remanded.