HAROLD O. WALES AND DOROTHY WALES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3617–65.    Filed May 29, 1968.

*Murray F. Hardesty*, for the petitioners.
*Edward E. Pigg*, for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in petitioners' income tax returns for the calendar years 1960 and 1961 in the following amounts:

| Year | Deficiency |
|------|-----------|
| 1960 | $5,244.30 |
| 1961 | 33,621.60 |

Only the year 1961 is now before us, as petitioners have conceded all issues relating to 1960 and have deposited the entire amount determined with respondent.

Some concessions have been made as to 1961, and the only question now remaining is whether petitioners have shown their election to liquidate their wholly owned corporation under section 333 [1] of the Internal Revenue Code to be invalid.

It is stipulated that in the event respondent's position is sustained on this issue, the deficiency for the taxable year 1961 will be as determined by respondent for that year. In the event petitioners' position is sustained, it is stipulated that the deficiency will be $9,493.09.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

The petitioners, Harold and Dorothy Wales, are husband and wife who, at all relevant times, have resided at Cheyenne Wells, Colo.

---

[1] Except where otherwise noted, references to the Internal Revenue Code refer to the Internal Revenue Code of 1954.

The petitioners, individually and jointly, have held all of the outstanding stock of the Harmack Grain Co. (hereinafter sometimes referred to as Harmack) at all relevant times. This company was engaged in the grain-storage and grain-merchandising business and as of May 23, 1960, it elected to be taxed as a small business corporation under subchapter S of the Internal Revenue Code (secs. 1371–1378).

On November 18, 1960, the petitioners filed an instrument dated November 15, 1960, with the State of Colorado. It bears the caption "Voluntary Dissolution of Harmack Grain Co. By Consent of Shareholders" and is identified in the stipulation as "A statement of intent to dissolve." It is reproduced below:

### VOLUNTARY DISSOLUTION OF HARMACK GRAIN CO. BY CONSENT OF SHAREHOLDERS

KNOW ALL MEN BY THESE PRESENTS That we, H. O. Wales and Dorothy Wales, being all of the shareholders of Harmack Grain Co. of Cheyenne Wells, Colorado, hereby and by these presents make our statement of intent to dissolve the said corporation and set forth the following information.

a. The name of the corporation is Harmack Grain Co.

b. The names and respective addresses of its officers are H. O. Wales, President, Cheyenne Wells, Colorado; Dorothy Wales, Secretary-Treasurer, Cheyenne Wells, Colorado.

c. The names and respective addresses of the directors are H. O. Wales, Cheyenne Wells, Colorado; and Dorothy Wales, Cheyenne Wells, Colorado.

d. The said H. O. Wales and Dorothy Wales, being all of the shareholders of the said corporation, by the execution of this instrument, hereby consent to the voluntary dissolution of the said corporation.

IN WITNESS WHEREOF, we have affixed our hands hereto this 15th day of November, 1960.

(S) H. O. Wales
H. O. WALES,
(S) Dorothy Wales
DOROTHY WALES,

*Shareholders.*

HARMACK GRAIN CO.
By (S) H. O. WALES,
*President.*

Attest:
   (S) DOROTHY WALES,
    *Secretary*

STATE OF COLORADO ⎱ ss.
COUNTY OF CHEYENNE ⎰

I, Dorothy Wales, Secretary of Harmack Grain Co., being first duly sworn upon oath, depose and say that the above and foregoing instrument is true.

(S) DOROTHY WALES

Subscribed and sworn to before me this 15th day of November, 1960.
My commission expires February 23, 1964.

(S) JOHN J. VANDEMOER, JR.,
*Notary Public*

Pursuant to this instrument, petitioners filed the following articles of dissolution with the Department of State of Colorado on February 16, 1961:

### ARTICLES OF DISSOLUTION OF HARMACK GRAIN COMPANY

Pursuant to the provisions of the Colorado Corporation Act, the undersigned corporation adopts the following Articles of Dissolution for the purpose of dissolving the corporation.

FIRST: The name of the corporation is Harmack Grain Company, Cheyenne Wells, Colorado

SECOND: A statement of intent to dissolve the corporation was filed in the office of the Secretary of State of the State of Colorado on November 18, 1960.

THIRD: All debts, obligations and liabilities of the corporation have been paid and discharged, or adequate provision has been made therefor.

FOURTH: All remaining property and assets of the corporation have been distributed among its shareholders, in accordance with their respective rights and interests.

FIFTH: There are no suits pending against the corporation in any court in respect of which adequate provision has not been made for the satisfaction of any judgment, order or decree which may be entered against it.

Dated February, 1961

HARMACK GRAIN COMPANY (Note 1)
By (S) H. O. WALES, *Its president.* (Note 2)
and (S) DOROTHY WALES, *Its secretary*

STATE OF COLORADO ⎱
COUNTY OF CHEYENNE ⎰ ss.

I, John J. Vandemoer Jr., a notary public, do hereby certify that on this — day of February, 1961, personally appeared before me, H. O. Wales, who, being by me first duly sworn, declared that he is the President of Harmack Grain Company that he signed the foregoing document as President of the corporation, and that the statements contained therein are true.

IN WITNESS WHEREOF I have hereunto set my hand and seal this 16th day of February, A.D. 1961.

My commission expires February 23, 1964

(S) JOHN J. VANDEMOER, JR.,
*Notary Public.*

Notes: 1. Exact corporate name of the corporation making the statement.
2. Signatures and titles of the officers signing for the corporation.

On March 3, 1961, the secretary of state of the State of Colorado issued the following certificate of dissolution of the Harmack Grain Co.:

### STATE OF COLORADO

DEPARTMENT OF STATE                    CERTIFICATE OF DISSOLUTION

### I, GEORGE J. BAKER,

Secretary of State of the State of Colorado, hereby certify that duplicate originals of Articles of Dissolution of Harmack Grain Company duly signed and verified pursuant to the provisions of the Colorado Corporation Act, have been received in this office and are found to conform to law.

Accordingly the undersigned, as such Secretary of State, and by virtue of the authority vested in me by law, hereby issues this Certificate of Dissolution and attaches hereto a duplicate original of the Articles of Dissolution.

Dated this Third day of March A.D. 1961.

(S) GEO. J. BAKER,
*Secretary of State.*

By F. J. SERAFINI,
*Deputy.*

On March 17, 1961, Form 966 was mailed to the district director of internal revenue in Denver on behalf of Harmack by Harold Wales. The form is titled "Return of Information Under Section 6043 of the Internal Revenue Code of 1954 to be Filed by Corporations within 30 Days After Adoption of Resolution or Plan of Dissolution, or Complete or Partial Liquidation." The form recited that Harmack corporation had adopted a plan of "dissolution, or complete or partial liquidation" as of February 16, 1961. Attached to this form were two Forms 964 signed by Harold Wales and Dorothy Wales respectively, which forms recited that the person signing same elected to have each and every share of capital stock in Harmack taxed in accordance with section 333 of the Internal Revenue Code. The forms recited that all property owned by the corporation was to be transferred in the month of March 1961. These documents were received by the district director on March 20, 1961.

On Harmack's income tax return for the fiscal year ended April 30, 1961, there was a footnote reciting that the stockholders elected to liquidate under section 333 of the Internal Revenue Code of 1954. Attached to the return was the following document:

SPECIAL MEETING OF THE STOCKHOLDERS OF HARMACK GRAIN COMPANY
CHEYENNE WELLS, COLORADO

A special meeting of the stockholders of Harmack Grain Company was held in Cheyenne Wells, Colorado, upon due notice and call, on the 16th day of February, 1961, for the purpose of adopting a plan of liquidation of said corporation.

All stockholders being present in person, namely Dorothy Wales and H. O. Wales, representing 850 shares of stock, the meeting having been called to order by the President, the minutes of the previous meeting having been read and approved, upon motion duly made, seconded and unanimously carried, the resolution was adopted:

"Whereas the Harmack Grain Company is in the process of being dissolved as a Corporation, and

Whereas a plan of liquidation should be adopted for the distribution of the assets of said Corporation, now therefore,

Be it Resolved that the following plan of liquidation be and the same is hereby adopted and approved, to-wit:

1. All of the assets of the Corporation shall be assigned, transferred and conveyed to the stockholders of said Corporation jointly, each to own an un-

divided interest therein in the proportion that his or her stock bears to the total amount of stock issued and outstanding.

2. Said distribution shall be made within 20 days of the date of the adoption of this resolution in exchange for the stock owned by such stockholders, which stock shall be surrendered to the Secretary of the Corporation and cancelled forthwith."

There being no further business to come before the meeting, upon motion duly made and seconded, same was adjourned.

(S) DOROTHY WALES
*Secretary*

The undersigned hereby waive any and all notice of the above meeting and hereby consent to and approve the action taken as set forth above.

Witness our hands this 16th day of February, 1961.

(S) H. O. Wales
H. O. WALES, *Sockholder*, (representing 400 shares)

(S) Dorothy Wales
DOROTHY WALES, *Stockholder*, (representing 30 shares)

(S) H. O. Wales and Dorothy Wales
H. O. AND DOROTHY WALES (representing 420 shares)

On their joint income tax return for the calendar year 1961 petitioners reported as long-term capital gain amounts received by them which resulted from the liquidation distributions from Harmack. In his statutory notice of deficiency, respondent determined that such amounts were ordinary income (dividends) to the petitioners under section 333(e) of the Internal Revenue Code.

ULTIMATE FINDING OF FACT

Petitioners failed in their attempt to become "Qualified Electing Shareholders" of Harmack Grain Co. under the provisions of section 333(c) and (d) of the Internal Revenue Code.

OPINION

This case presents the narrow factual question whether Harmack's plan of liquidation was adopted on February 16, 1961, as contended by respondent, or on November 18, 1960, as is contended by petitioners. This depends upon the narrow combined question of law and fact as to whether the November 1960 activities of Harmack amounted to the adoption of a "plan of liquidation."

Section 333(c) and (d) of the Code provides that in order to become a "qualified electing shareholder," a shareholder *must* file his written election within 30 days after the date of adoption of "the plan of liquidation."

Neither party contests that in the instant case the petitioners' attempted elections on Forms 964 were timely if February 16, 1961, is

the date of the adoption of the plan, but were out of time if the plan was adopted on November 18, 1960.

Petitioners urge other and alternative grounds for avoidance of their attempted elections which we need not, and do not consider.

In this case it is apparent that petitioners misconceived the meaning and effect of a liquidation of their wholly owned corporation under the provisions of Code section 333.[2] On their joint income tax return for 1961 they showed their liquidation distributions from Harmack as long-term capital gains in contravention to the requirements of section 333(e)(1). Respondent's determination treated the requisite portion of such distributions as dividends under that section. Petitioners now realize that their attempted elections were to their disadvantage and seek to avoid them.

The instant case presents an essentially identical question as was presented to us in *Frank T. Shull*, 34 T.C. 533 (1960), reversed and remanded 291 F.2d. 680 (C.A. 4, 1961). In *Shull* the taxpayers, sole

---

[2] SEC. 333. ELECTION AS TO RECOGNITION OF GAIN IN CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—In the case of property distributed in complete liquidation of a domestic corporation (other than a collapsible corporation to which section 341(a) applies), if—

   (1) the liquidation is made in pursuance of a plan of liquidation adopted on or after June 22, 1954, and

   (2) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within some one calendar month, then in the case of each qualified electing shareholder (as defined in subsection (c)) gain on the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subsections (e) and (f).

\*       \*       \*       \*       \*       \*       \*       \*

(c) QUALIFIED ELECTING SHAREHOLDERS.—For purposes of this section, the term "qualified electing shareholder" means a shareholder (other than an excluded corporation) of any class of stock (whether or not entitled to vote on the adoption of the plan of liquidation) who is a shareholder at the time of the adoption of such plan, and whose written election to have the benefits of subsection (a) has been made and filed in accordance with subsection (d), but—

\*       \*       \*       \*       \*       \*       \*

(d) MAKING AND FILING OF ELECTIONS.—The written elections referred to in subsection (c) must be made and filed in such manner as to be not in contravention of regulations prescribed by the Secretary or his delegate. The filing must be within 30 days after the date of the adoption of the plan of liquidation.

(e) NONCORPORATE SHAREHOLDERS.—In the case of a qualified electing shareholder other than a corporation—

   (1) there shall be recognized, and treated as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, such earnings and profits to be determined as of the close of the month in which the transfer in liquidation occurred under subsection (a)(2), but without diminution by reason of distributions made during such month; but by including in the computation thereof all amounts accrued up to the date on which the transfer of all the property under the liquidation is completed; and

   (2) there shall be recognized, and treated as short-term or long-term capital gain, as the case may be, so much of the remainder of the gain as is not in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock or securities acquired by the corporation after December 31, 1953, exceeds his ratable share of such earnings and profits.

(f) CORPORATE SHAREHOLDERS.— \*   \*   \*

owners of a corporation, filed a consent to dissolution with the Virginia State Corporation Commission on March 27, 1952. Subsequently they filed an election to be taxed under section 112(b)(7) of the 1939 Code (now section 333), and stated that they had formally adopted a plan of liquidation on March 31, 1952. The election was filed within 30 days of March 31, but more than 30 days after March 27. Subsequently, the taxpayers realized that their election was to their disadvantage and contended that their election was invalid, because they had actually adopted a plan of liquidation on March 27.

As in the instant case, the Commissioner contended that their election did conform to the requirements of (now) section 333.

When the issue was presented to us, we found that no plan of liquidation was adopted when the shareholder consents to dissolution were obtained because the consents were "no more than a unanimous vote to accomplish dissolution," and a vote to dissolve was not the equivalent of an adoption of a plan of liquidation. Our holding in *Shull* amounted in effect to a requirement that the "plan of liquidation" specified in the statute be a completely detailed and definitive plan.

There is no definition of the term "plan of liquidation" in section 333. The term appears in a number of other sections in both the 1939 and 1954 Codes, but none of them affords a definition of the term. Cf. sections 337, 332, and 346 of the 1954 Code and 112(b)(6), 112(b)(7), and (prior to its amendment in 1942) 115(c) of the 1939 Code.

Since deciding *Shull* we have departed from the views expressed therein. In *Mountain Water Co. of La Crescenta*, 35 T.C. 418 (1960), we said (pp. 426–427):

We think it is clear from the evidence in this case that a plan of liquidation was adopted by petitioner on April 25, 1955, when the directors decided to accept the condemnation award without appeal and in fact accepted a check for the net amount thereof. Prior to that date the directors had recognized the probability that all the operating assets of the company would be taken by the county water district and the purpose for existence of the company would cease; and it is apparent that the *consensus of opinion* was that if the condemnation was successful, the proceeds from the involuntary sale should be distributed in liquidation. But in view of the reluctance of the stockholders to sell without a fight, no final decision was made until the meeting of April 25, 1955. When the decision to accept the award was made at that meeting, the plan of liquidation was put into effect even though no formal resolution of liquidation or dissolution was adopted. Obtaining the consent of the stockholders to dissolve the company and the subsequent adoption of a resolution of dissolution at the directors meeting on June 7, 1955, [the date contended for by respondent] was only one of the formal steps taken in carrying out the plan of liquidation. * * * [Emphasis supplied.]

Similarly, in *Alameda Realty Corporation*, 42 T.C. 273 (1964), we said (p. 281):

Raymond and Irma (the sole stockholders and directors of Alameda) decided to accept the offer and take the money received by Alameda from the sale of the building for their own use. The facts show that this decision was made on or

shortly prior to October 6, 1955, when Alameda entered into the contract to sell the Finance Building. The facts further show that the Finance Building was Alameda's only operating asset. After Alameda sold the Finance Building, its only asset other than debts due it by Raymond and Irma, was money and Raymond and Irma withdrew this money for their personal use as they planned to do when they agreed to have Alameda sell the building. These facts show a plan of liquidation and distribution of assets. * * *

Thus in these two cases we have held: (1) That the acceptance of a condemnation award coupled with a "consensus of opinion" to liquidate, and (2) that the sale of the only operating asset of a corporation, were each sufficient to evidence the adoption of a "plan of liquidation." Certainly neither case is factually as strong as is the case where the corporation's shareholders have taken action to come under a State statute committing the company to liquidation under a plan therein set forth.

Prior to *Shull* we had held repeatedly that no formal plan of liquidation was necessary. *John R. Roach*, 4 T.C. 1255 (1945); *Service Co.* v. *Commissioner*, 165 F.2d 75 (C.A. 8, 1948), affirming a Memorandum Opinion of this Court; *International Investment Corporation*, 11 T.C. 678 (1948), aff'd. 175 F.2d 772 (C.A. 3, 1949).

In reversing us in *Shull*, 291 F.2d 680 (C.A. 4, 1961), the circuit court held that when written consents to dissolution were signed and filed by the shareholders, a written plan of liquidation was effectively adopted. That court pointed out that under the Code of Virginia, upon filing a written consent to dissolution by the shareholders of a corporation, a certificate of dissolution was caused to be issued and the corporation was officially dissolved. Thereafter the corporation had a limited existence for the purpose of settling the corporate affairs, selling and conveying its property, and dividing its assets among its stockholders in final liquidation. In addition, by statute, the business of the corporation could no longer be continued.

Under those circumstances, the court found that the corporation in that case was clearly in a status of liquidation under a plan of liquidation. The shareholders had "stripped from the corporation its old clothes and placed upon it the shroud of liquidation. Since they had acted deliberately, they would hardly be heard to say they had no plan to do what they had done."

In holding the plan to be one envisioned by Congress in enacting (now) section 333, the court pointed out at pages 682–683:

There is nothing in § 112(b)(7) [now 333] which requires that a plan of liquidation must be in writing or in any particular form.

Paragraph (A)[5] [now (a)] simply provides that if liquidation occurs within one calendar month, the distribution in complete liquidation will result in limited recognition of gain to electing shareholders with respect to the shares they own at the time of the adoption of the plan of liquidation.

Paragraph (D)° [now (d)] provides that the election must be filed within thirty days after the adoption of the plan of liquidation, but nowhere does § 112 (b) (7) [now 333] purport to declare how a plan of liquidation is to be adopted or how its adoption is to be evidenced.

Paragraph (C) [now (c)] does provide that the election of an individual shall be ineffective unless stockholders having not less than eighty per cent of the total combined voting value of all classes of stock entitled to vote on the adoption of the plan of liquidation make similar elections, but this conditional limitation upon the right of stockholders to make an election does not import into Paragraph (A) a requirement that the plan shall have been adopted at an open stockholders' meeting called for that purpose or suggest that the unanimous written consent of all stockholders to a plan of liquidation is not an effective adoption of the plan within the meaning of § 112(b) (7).

It appears, therefore, that when the two stockholders who owned the entire outstanding stock of the corporation signed and filed their written consent to its dissolution under the provisions of Virginia's laws a written plan of liquidation was effectively adopted. The Certificate of Dissolution, which then issued, and Virginia's statutes fully authorized the directors to do everything necessary to accomplish the liquidation of the corporation without further action by the stockholders.

[Footnotes omitted.]

In conclusion the court stated at pages 684–685:

Unquestionably, whether a plan of liquidation has or has not been adopted is a question of fact ordinarily for the Tax Court. When the stockholders acted deliberately, however, and had gone so far in the actual execution of a plan of liquidation as to dissolve the corporation and terminate its existence for all purposes other than liquidation, we find no escape from the conclusion that a plan of liquidation had been adopted. If subsequently, the stockholders in a formal way declared their intention to do what they already had done, the declaration was of no controlling significance.

In the instant case, petitioners entered into an agreement to dissolve their wholly owned corporation and filed the agreement with the State of Colorado. Thereafter they complied with the Colorado statutes providing for dissolution and eventually received a certificate of dissolution from the State.

Under Colorado law, Colo. Rev. Stat. Ann. secs. 31–34–5 and 31–34–6 (Supp. 1960), a corporation filing a statement of intent to dissolve was required to cease normal business operations, proceed to wind up its affairs, and distribute all assets to its shareholders after making provision for its obligations. These provisions are substantially identical to the provisions of the Virginia statute which controlled *Shull*. The relevant provisions of the Colorado statute in effect during 1960 and 1961 are reproduced below:

31–34–5. Procedure after filing of statement of intent to dissolve.—(1) After the filing by the secretary of state of a statement of intent to dissolve the corporation shall immediately cause notice thereof to be mailed to each known creditor of the corporation.

(2) The corporation shall proceed to collect its assets, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders,

pay, satisfy, and discharge its liabilities and obligations and do all other acts required to liquidate its business and affairs, and, *after paying or adequately providing for the payment of all its obligations, distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.*

\*      \*      \*      \*      \*      \*      \*

31-34-6.  Effect of statement of intent to dissolve.—Upon the filing by the secretary of state of a statement of intent to dissolve, whether by consent of shareholders or by act of the corporation, *the corporation shall cease to carry on its business, except in so far as may be necessary for the winding up thereof,* but its corporate existence shall continue until a certificate of dissolution has been issued by the secretary of state or until a decree dissolving the corporation has been entered by a district court of the county in which the registered office or principal place of business of the corporation is situate as in this code provided.

[Emphasis supplied.]

When petitioners' statement was filed with the State of Colorado those portions of the Colorado statutes which we have emphasized not only set forth the manner of liquidation but prohibited the corporation from all other activity. When the petitioners, as sole shareholders, filed their intent to dissolve, they affirmatively committed themselves to follow those provisions. And we find, as the Fourth Circuit found in *Shull,* that that type of commitment was sufficient to constitute the adoption of a plan of liquidation.

Certainly under the reasoning of the decided cases, there would have been no doubt that a plan of liquidation existed had the statement of intent to dissolve stated a course of liquidation identical to the Colorado statutes. The fact that the statutory provisions bound the petitioners by operation of law at the time of filing, rather than through formal adoption by them of a compatible plan, does not change the fact that the petitioners agreed to carry out liquidations in a specified manner.

We note further that section 333(a)(1) merely requires that the liquidation be in pursuance of a plan of liquidation—nothing more. Such language is in contrast to that in section 332(b)(3), which refers to liquidation of subsidiaries, where the provision requires a "plan of liquidation under which the transfer of all the property under the liquidation is to be completed within 3 years from the close of the taxable year during which is made the first of the series of distributions under the plan." It seems clear that had Congress wished the plan of liquidation to be as explicit in section 333 as in 332(b)(3), it would have used language as explicit as that in 332(b)(3).

Under the Colorado statutes, dissolution is delayed until a final distribution is made, while in Virginia it occurs immediately after filing a consent to dissolve. However, this distinction does not alter the fact that in both States, when the respective declarations of intent to dissolve are filed, there is shown an intent to proceed to liquidate a corporation in a prescribed manner. In each State the duties of the

directors of a corporation to effect the final distribution of a corporation's assets are substantially identical.

Therefore, we recognize the identity between this case and *Shull*, and follow the Court of Appeals therein.

Having found that a plan of liquidation was adopted on November 18, 1960, we find that no election to liquidate under section 333 was timely filed within 30 days of that time; thus petitioners' election to liquidate under that section was invalid. We therefore adopt the stipulation of the parties that petitioners' tax liability for 1961 is $9,493.09 and in that amount.

Reviewed by the Court.

> *Decision will be entered in accordance with the foregoing opinion.*

DRENNEN, *J.*, concurs in the result.