LAKE IOLA GROVES, INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Lake Iola Groves, Inc. v. Commissioner
Docket Nos. 27084-81, 27086-81, 27087-81.
United States Tax Court
T.C. Memo 1984-18; 1984 Tax Ct. Memo LEXIS 658; 47 T.C.M. (CCH) 880; T.C.M. (RIA) 84018; January 10, 1984. George W. Ericksen and Charles F. Clark, for the petitioners. J. Michael Melvin, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years as follows: Docket
Taxable Years
Petitioners
Nos.
Ending
Amounts
Lake Iola Groves,
27084-81
June 30, 1977
$24,461.88
Inc.
Estate of H. Stockton
27086-81
December 31, 1977
127,329.10
Massey, Jr., Deceased,
Sallie E. Massey,
Personal Representative
and Iva Massey
H. Van Pittman and
27087-81
December 31, 1977
116,878.76
Julia M. Pittman
*659 The issues for decision are (1) whether distributions received by the shareholders of Lake Iola Groves, Inc., qualify for nonrecognition pursuant to section 333[2] when the corporation was completely liquidated; and (2) the tax consequences to Lake Iola Groves, Inc., upon the distribution of its assets to its shareholders in accordance with its complete liquidation. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. Petitioner Lake Iola Groves, Inc., filed a Federal corporate income tax return for its taxable year ending June 30, 1977. Petitioners H. Stockton Massey, Jr., [3] and Iva Massey were married at all times during 1977 and filed a joint Federal income tax return for their 1977 taxable year. Petitioners H. Van Pittman and Julia Pittman were married at all times during 1977 and also filed a joint Federal income tax return for their 1977 taxable year. [4] All of these tax returns were filed with the Internal Revenue Service in Atlanta, Georgia. All of the individual petitioners *660 were legal residents of Florida when they filed their petitions. Petitioner Lake Iola Groves, Inc., was a Florida corporation based in Dade City, Florida. It was incorporated in 1962 and liquidated and dissolved in 1977. [5] During its life, it engaged in the business of owning and operating citrus groves in Florida. Throughout its existence, the corporation's only shareholders were petitioners H. Stockton Massey, Jr., and Julia Pittman, who each *661 owned 50 percent of the stock. At all relevant times, the Board of Directors of the corporation was composed of Sallie Massey and petitioners H. Stockton Massey, Jr., and Julia Pittman. Sallie Massey is the mother of petitioners H. Stockton Massey, Jr., and Julia Pittman and is also the widow of Herbert S. Massey. Petitioners Julia Pittman and H. Stockton Massey also each owned 50 percent of the outstanding stock of another corporation, Sunnybrook Groves, Inc. Herbert S. Massey died on June 24, 1968. Sallie Massey was the Executrix of his estate. Shortly after his death, discussions commenced concerning the distribution of estate assets to his children. One of the estate assets consisted of 100 percent of the stock of H.S. Massey Groves Caretaking Corporation, which provided various citrus grove services to Lake Iola Groves, Inc. Despite their joint ownership of several corporations (or as a result, thereof, the record is unclear), there existed considerable animosity *662 between petitioners Julia Pittman and H. Stockton Massey, Jr. Such hostility climaxed when subsequent to the death of her father, Herbert S. Massey, petitioner Julia Pittman requested that the estate assets be distributed in such a manner so as to preclude any additional joint ownership of assets with her brother, petitioner H. Stockton Massey, Jr. Further, petitioner Julia Pittman also sought to terminate her joint ownership of Lake Iola Groves, Inc., and Sunnybrook Groves, Inc., so that either she or petitioner H. Stockton Massey, Jr., would have exclusive ownership of the corporations. Negotiations concerning the method by which such separation of ownership was to be effected continued between petitioners H. Stockton Massey, Jr., and Julia Pittman through their attorneys and accountant over several months. On May 5, 1977, the parties and their accountant met and generally concluded their negotiations. A written agreement summarizing their plans was prepared subsequent to this meeting by the parties' counsel and relevant portions thereof follow: AGREEMENT
This agreement between H. Stockton Massey, Jr. ("Massey") and Julia M. Pittman ("Pittman") made as of May 5, 1977, provides *663 as follows: 1. Each has presently an interest as beneficiary under the will of Herbert S. Massey of one-half of his estate. 2. Each has presently an ownership of 50% of the capital stock of Sunnybrook Groves, Inc., and 50% of the capital stock of Lake Iola Groves, Inc. 3. Simultaneously with the execution of this agreement, Lake Iola Groves, Inc. has adopted a plan of corporate liquidation under the provisions of § 333 of the Internal Revenue Code. 4. Simultaneously with the execution of this agreement Sunnybrook Groves, Inc. has adopted a plan of corporate separation (50-50) meeting the requirements of § 355 of the Internal Revenue Code. 5. On or before June 30, 1977, Pittman will place a value on the real properties owned by Sunnybrook Groves, Inc. and Lake Iola Groves, Inc., and report such values to Massey and to Rex Meighen & Co., Certified Public Accountants, so that accountants can substitute such real property values for the real property book values in such corporations, and substitute $15,400 for the book value of the tangible personal property of Sunnybrook Groves, Inc., and determine book values on an accrual *664 basis for all other assets and liabilities as shown by the books on the date that such values are reported, determining a net worth on that basis; and such net worth shall be used to establish values of shares and of interests to be liquidated out for the purpose of the exercise by Massey of the option hereinafter provided for. At the same time, Pittman will establish the terms on which such shares and assets shall be purchased or sold and the closing date, depending on the exercise of the Massey option. There shall be no extensions or waivers of such terms except on the express written agreement of the parties. Although the agreement bears a May 5, 1977, date, this document was actually signed by petitioner Julia Pittman on May 23, 1977, and petitioner H. Stockton Massey, Jr., on May 24, 1977. Neither petitioner was present when the other executed the agreement due to petitioner Julia Pittman's insistence that she not see her brother. Subsequent to the execution of this document, the parties' counsel was requested to prepare draft minutes of a Lake Iola Groves, Inc., shareholder meeting which was to reflect the formal adoption of a plan of liquidation by the corporation. *665 As originally drafted, these minutes indicated that a shareholder meeting was held on May 24, 1977, and that a plan of complete liquidation pursuant to section 333 had been adopted. Upon review, the parties, accountant, who was aware that the animosity between petitioners H. Stockton, Massey, Jr., and Julia Pittman had prevented any face-to-face meeting, revised said minutes to reflect a corporate shareholder meeting to be held on June 22, 1977. On June 22, 1977, the shareholders of Lake Iola Groves, Inc., held a special meeting. At the insistence of their accountant, both petitioners H. Stockton Massey, Jr., and Julia Pittman briefly met to dispense with the necessary corporate formalities. At this meeting, a plan of complete liquidation pursuant to section 333 was formally adopted and deeds were executed to effect the distribution of corporate assets to the shareholders. Petitioners Julia Pittman and H. Stockton Massey, Jr., filed section 333 shareholder elections (forms 964) on July 22, 1977. Petitioners H. Stockton Massey, Jr., and Julia Pittman subsequently executed an agreement dated August 15, 1977, which amended their previous agreement dated May 5, 1977, in several *666 respects. This agreement also specifically provided that "the terms of the [earlier] agreement * * * shall remain in full force and effect and unaltered as to all other terms, conditions and provisions contained therein." These individuals also executed this agreement on different dates, presumably at petitioner Julia Pittman's insistence that she not see her brother. All of the appropriate steps pertaining to the dissolution of Lake Iola Groves, Inc., were subsequently completed and the corporation was dissolved in December, 1977. On their joint Federal income tax returns for their 1977 taxable years, petitioners H. Van Pittman and Julia M. Pittman and H. Stockton Massey, Jr., and Iva Massey did not include any income with respect to the corporate liquidation transaction. Both couples, however, reported that Lake Iola Groves, Inc., had been liquidated in June, 1977, and that they had elected to be taxed pursuant to section 333. Petitioner Lake Iola Groves, Inc., also did not include any income on its Federal corporate income tax return for the taxable year ending June 30, 1977, with respect to its complete liquidation. The return did, however, report that the corporation *667 had been liquidated in June, 1977. The Commissioner determined that each couple realized capital gains in the amount of $385,919 because their section 333 shareholder elections concerning Lake Iola Groves, Inc., were untimely. The Commissioner also determined that petitioner Lake Iola Groves, Inc., "realized ordinary gain [sic] in the amount of $67,924.26 representing the distribution of grove property to shareholders in the tax year ended June 30, 1977." OPINION The first issue for decision is whether the distributions to the shareholders of Lake Iola Groves, Inc., in complete liquidation of the corporation qualify for nonrecognition pursuant to section 333. The mechanics of qualifying for nonrecognition pursuant to section 333 are relatively simple. Subject to minimum election requirements, the corporation must adopt a plan of complete liquidation and the electing shareholders must timely file the requisite forms with the Internal Revenue Service. Sec. 333. The elections must be filed within 30 days after the adoption of the plan of liquidation and under no circumstances shall section 333 be applicable to distributions to any shareholders who fail to file their *668 elections within the 30-day period. Sec. 1.333-3, Income Tax Regs; Dunavant v. Commissioner,63 T.C. 316, 320 (1974). Liquidating distributions which do not qualify for nonrecognition pursuant to section 333 generally are taxed under section 331. In the instant case, petitioners H. Stockton Massey, Jr., and Julia Pittman, who collectively owned all of the stock of Lake Iola Groves, Inc., filed their section 333 elections on July 22, 1977. Therefore, the only qualification issue is the date that Lake Iola Groves, Inc., adopted a plan of complete liquidation, i.e., was the plan adopted within the previous 30 days that petitioners filed their elections? The issue of when Lake Iola Groves, Inc., adopted a plan of liquidation is a question of fact. Shull v. Commissioner,291 F.2d 680, 684 (4th Cir. 1961), revg. 34 T.C. 533 (1960) on another issue. In resolving this matter, this Court has previously pointed out that section 333 does not define the phrase "plan of liquidation." Wales v. Commissioner,50 T.C. 399, 405 (1968). The law pertaining to what acts constitute the adoption of a plan of liquidation is rather unsettled. *669 Section 1.337-2(b), Income Tax Regs., which addresses the nonrecognition of gain or loss on sales or exchanges in connection with certain liquidations, provides that: Ordinarily the date of the adoption of a plan of complete liquidation by a corporation is the date of adoption by the shareholders of the resolution authorizing the distribution of all the assets of the corporation (other than those retained to meet claims) in redemption of all of its stock. However, no formal corporate resolution is necessary to adopt a plan of complete liquidation and we have relied upon a variety of distinct events evidencing the adoption of a plan of liquidation. Wales v. Commissioner,supra, (filing of statement of intent to dissolve with the appropriate state authorities); Alameda Realty Corporation v. Commissioner,42 T.C. 273 (1964), (withdrawal of all the corporate assets); Mountain Water Co. of La Crescenta v. Commissioner,35 T.C. 418 (1960) (acceptance of a condemnation award). Respondent asserts that when petitioners H. Stockton Massey, Jr., and Julia Pittman executed their May 5, 1977, agreement on May 23 and May 24, 1977, the *670 corporation adopted a plan of liquidation. Therefore, petitioners' elections under section 333, which were filed on July 22, 1977, were untimely and the distributions in liquidation are taxable to them under section 331. In support thereof, respondent points out that the agreement dated May 5, 1977, specifically provides that "[s]imultaneously with the execution of this agreement, Lake Iola Groves, Inc. has adopted a plan of corporate liquidation under the provisions of § 333 of the Internal Revenue Code." Further, respondent claims that pursuant to Fla. Stat. Ann. section 607.394(1) (West 1977), [6] no formal shareholder meeting is required to adopt a plan of liquidation provided that the shareholders have consented to the action in writing. Respondent contends that the May 5, 1977, document satisfies this section; hence, under the authority of Wales v. Commissioner,supra, and Shull v. Commissioner,supra, a plan of liquidation was adopted by the corporation on May 5, 1977. Respondent also points out that an August 15, 1977, amendment to the May 5, 1977, agreement, which altered some of the substantive provisions *671 of the earlier agreement, specifically provides that the May 5 agreement "shall remain in full force and effect and unaltered as to all other terms, conditions and provisions contained therein * * *." Therefore, because petitioners have utilized words with definite legal meaning and effect in their agreements and taxpayers are generally free to organize their affairs as they choose, respondent asserts that petitioners are bound by the consequences of their May 5, 1977, agreement. *672 Respondent does not dispute that Lake Iola Groves, Inc., formally adopted a plan of complete liquidation at the special shareholders' meeting on June 22, 1977. He contends, however, that the corporation previously adopted the plan of liquidation pursuant to Florida law when petitioners executed the May 5, 1977, agreement and that thne corporation merely ratified an existing and previously adopted plan of liquidation at the June 22, 1977, shareholder meeting. Petitioners assert that Lake Iola Groves, Inc.'s formal adoption of a corporate liquidation resolution at a June 22, 1977, shareholder meeting, constitutes the first date of adoption of the plan; hence, their elections under section 333, which were filed on July 22, 1977, were timely. In support thereof, they claim that the Congressional policy behind section 333 and its election procedures is to introduce "certainty" into an unsettled area of the law and that respondent's approach would not promote such. Further, petitioners distinguish the Wales v. Commissioner,supra, and Shull v. Commissioner,supra, decisions as taxpayer relief cases in which the courts have declared invalid *673 elections pursuant to section 333 so as to minimize the tax consequences of disadvantageous decisions by the shareholders. Finally, petitioners assert that their May 5, 1977, agreement merely reflected an agreement between the individuals to cause the corporation to adopt a liquidation plan and does not constitute a final corporate decision. After reviewing all of the evidence, we find that Lake Iola Groves, Inc.'s shareholders intended to adopt a plan of liquidation when the corporation formally adopted a liquidation resolution at the June 22, 1977, meeting of its shareholders. This is partially demonstrated by the passage of a corporate liquidation resolution on such date. Had the shareholders intended for the corporation to adopt a plan of liquidation informally pursuant to Fla. Stat. Ann. section 607.394(1) (West 1977) when petitioners H. Stockton Massey, Jr., and Julia Pittman executed the May 5, 1977, agreement, said document would have recited that fact and dispensed with the need for the shareholders to meet on June 22, 1977. The fact that petitioner Julia Pittman desired to avoid any meetings with her brother, petitioner H. Stockton Massey, Jr., and met with him only *674 on June 22, 1977, at the insistence of her accountant so as to formally adopt a plan of liquidation clearly supports this finding. Finally, the fact that corporate minutes reflecting a shareholder meeting on May 24, 1977, were revised to conform with the contemplated meeting on June 22, 1977, further indicates the petitioners' intent that a plan of liquidation be adopted at the June 22, 1977, meeting and a plan was not previously adopted.
In Knox v. Commissioner,323 F.2d 84, 87 (5th Cir. 1963), revg, a Memorandum Opinion of this Court, the Court of Appeals for the Fifth Circuit stated that in determining when a plan of liquidation is adopted under section 112(b)(7) of the Internal Revenue Code of 1939 (now section 333): The section does not indicate how the adoption of a plan of liquidation is to be evidenced. See Shull v. Commissioner, 4 Cir., 1961, 291 F.2d 680. The determining element is "the intention to liquidate the business, coupled with the actual distribution * * * to the stockholders." Kennemer v. Commissioner, 5 Cir., 1938, 96 F.2d 177, 178; Shore v. Commissioner, 5 Cir., 1961, 286 F.2d 742, 745. *675 That intention must be expressed or adopted by the corporation. The absence of a formal written plan is not fatal if there exists in fact an intention to liquidate, but those having the legal control of the corporation must entertain such an intention. See 1 Mertens Law of Federal Income Taxation, Sec. 9.79. [Emphasis added.] In Bonner v. City of Prichard, Alabama,661 F.2d 1206, 1207 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit expressly adopted as binding precedent for Federal courts within its circuit, the decisions of the "old" Fifth Circuit which were decided prior to October 1, 1981. Since the immediate consolidated cases are appealable to the Eleventh Circuit, we are bound by the court's test enunciated in Knox.Golsen v. Commissioner,54 T.C. 742, 757 (1970); affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). Therefore, given that the shareholders of Lake Iola Groves, Inc., intended that the corporation adopt a plan of liquidation at the special meeting of shareholders held on June 22, 1977, we find that the corporation did adopt a plan of liquidation on said date; *676 hence, petitioners H. Stockton Massey, Jr., and Julia Pittman's elections were timely and the distributions in liquidation qualify for nonrecognition pursuant to section 333. We are mindful that petitioners Julia Pittman and H. Stockton Massey, Jr., signed a document in late May, 1977, which stated that Lake Iola Groves, Inc., had adopted a plan of liquidation. We attribute this inconsistent statement to the carelessness of the attorney and accountant who drafted and reviewed this document. A paragraph stating that a corporation "simultaneously with the execution of this agreement * * * has adopted a plan of corporate liquidation under the provisions of § 333 of the Internal Revenue Code" normally has significant substantive effect and should not be utilized unless the taxpayers and their advisers unequivocably desire that to be true. Ordinarily, a taxpayer will be bound by the tax consequences of the form in which he has chosen to cast a transaction. Noble v. Commissioner,79 T.C. 751, 767 (1982). This stems from the notion that "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must *677 accept the tax consequences of his choice, whether contemplated or not * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not." Commissioner v. Nat. Alfalfa Dehydrating,417 U.S. 134, 149 (1974); Don E. Williams Co. v. Commissioner,429 U.S. 569 (1977). In the instant case, however, the intent of petitioners H. Stockton Massey, Jr., and Julia Pittman is controlling and we have found that they intended for Lake Iola Groves, Inc., to adopt a plan of liquidation on June 22, 1977. Knox v. Commissioner,supra;Golsen v. Commissioner,supra.
The remaining issue is the tax consequence to petitioner Lake Iola Groves, Inc., upon the distribution of its assets to its shareholders in accordance with its complete liquidation. The Commissioner determined that petitioner Lake Iola Groves, Inc., "realized ordinary gain [sic] in the amount of $67,924.26 representing the distribution of grove property to shareholders in the tax year ended June 30, 1977." Petitioner bears the burden of proving that the Commissioner's detemination is incorrect. Rule 142(a), Tax Court Rules of *678 Practice and Procedure.
In its petition, Lake Iola Groves, Inc., alleged that the Commissioner's determination was erroneous but provided no legal or factual basis for such allegation. The remainder of its petition addressed factual issues pertaining to when the plan of liquidation was adopted which is totally irrelevant to the matter contained in its statutory notice. Petitioner did not further address this matter at trial or on brief. Therefore, we find that petitioner Lake Iola Groves, Inc., has failed to carry its burden of proof; hence, the Commissioner's determination must be sustained. Rule 142(a), Tax Court Rules of Practice and Procedure.
Decision will be entered for respondent in docket No. 27084-81.
Decisions will be entered for petitioners in docket Nos. 27086-81 and 27087-81.
Footnotes
1. Cases of the following petitioners were consolidated herewith for trial, briefing and opinion: Estate of H. Stockton Massey, Jr., Deceased, Sallie E. Massey, Personal Representative and Iva Massey, docket No. 27086-81; H. Van Pittman and Julia M. Pittman, docket No. 27087-81.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Subsequent to the filing of the petition with Iva Massey, H. Stockton Massey, Jr., died.By order dated November 26, 1982, the Personal Representative of the Estate of H. Stockton Massey was substituted as the proper party to these proceedings. For convenience, however, we will refer to this petitioner as H. Stockton Massey, Jr. ↩
4. Petitioners Iva Massey and H. Van Pittman are parties herein solely as the result of filing joint Federal income tax returns with their respective spouses. They were not personally involved in any of the relevant events in issue; hence, for purposes of simplicity, we will refer only to petitioners H. Stockton Massey, Jr., and Julia Pittman when discussing each couple's respective tax liability.↩
5. Its petition in the immediate proceedings was filed by the directors of the corporation at the time of dissolution, acting as trustees in accordance with Fla. Stat. Ann, sec. 607.301↩ (West 1981).
6. 607.394 Action by shareholders without a meeting
(1) Unless otherwise provided in the articles of incorporation, any action required by this chapter to be taken at any annual or special meeting of shareholders of a corporation, or any action which may be taken at any annual or special meeting of such shareholders, may be taken without a meeting, without prior notice, and without a vote if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. If any class of shares is entitled to vote thereon as a class, such written consent shall be required of the holders of a majority of the shares of each class of shares entitled to vote as a class thereon and of the total shares entitled to vote thereon.↩